133 N.J. Super. 308 (1975)
336 A.2d 80
LAWRENCE R. McCOY CO., INC., PREMIER TRADING CO., PHILLIP BROTHERS (SOCOMET, INC.), RUSS STONIER, INC., AMERLUZ STEEL PRODUCTS CORP., SIMPSON TIMBER CO. AND SIMPSON INTERNATIONAL, C. ITOH & CO. (AMERICA) INC., WEYERHAUSER CO., KURT ORBAN CO., INC., SIGMA MACHINERY, INC., C.A.M. MACHINERY CORP., FIDELITY MACHINE TOOL, INC., NATIONAL MACHINERY EXCHANGE, INC., EVANS PRODUCTS CO., PLAINTIFFS,
v.
S.S. "THEOMITOR III", MONDEZUMA COMPANIA ARMADORA, S.A., RETLA STEAMSHIP CO., S.S. "OLYMPIC PEARL", FALMOUTH MARINE PANAMA, S.A., S.S. "MEGALO HARI", DEMETRIOS RAVIOLOS AND PETROS DAICAS, S.S. "OLYMPIC PIONEER", RICHMOND MARINE PANAMA, S.A., SIDMAR MARITIEME STAALNIJVERHEID, S.S. "FRATERNITY", DICTA MARITIME CORP., FRATERNITY SHIPPING CORP., S.S. "OLYMPIC PEGASUS", SOMERSET NAVIGATIONAL CO., PANAMA, S.A., S.S. "BRITISH MONARCH", SCOTT'S SHIPBUILDING & ENG. CO., LTD., S.S. "VENNACHAR", AIDEN SHIPPING CO., LTD., S.S. "PHILIPPINE BATAAN", MARITIME CO. OF THE PHILIPPINES, HOLT HAULING & WAREHOUSE SYSTEMS, INC., HOLT MARINE TERMINAL, INC., LUCKENBACH STEAMSHIP CO., INC., AND SOUTH JERSEY PORT CORPORATION, A CORPORATION WITHIN THE STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, DEFENDANTS. HOLT MARINE TERMINAL, CORP., A NEW JERSEY CORPORATION, THIRD-PARTY PLAINTIFF,
v.
LUCKENBACH STEAMSHIP CO., INC., A DELAWARE CORPORATION, AND SOUTH JERSEY PORT CORPORATION, A CORPORATION WITHIN THE STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANTS. AMERICAN WOOD FINISHING SYSTEMS, PLAINTIFF,
v.
HOLT HAULING & WAREHOUSE SYSTEMS, INC. AND SOUTH JERSEY PORT CORPORATION, A CORPORATION WITHIN THE STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 25, 1975.
*312 Mr. David A. Birch for plaintiffs (Messrs. Lum, Biunno & Tompkins, attorneys; Mr. Ronald DeMaria of counsel)
Mr. John P. Dwyer for defendants S.S. "Theomitor III" et al. (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Raul Betancourt, Jr. and Mr. Richard W. Palmer of the Pennsylvania Bar on the brief and of counsel).
Mr. James H. Freis for defendant and third-party plaintiff Holt Marine Terminal, Inc. (Messrs. Shanley & Fisher, attorneys; Mr. William G. Becker, Jr. on the brief and of counsel).
Mr. Daniel K. Read for defendant and third-party defendant Luckenbach Steamship Co.
Mr. Charles M. Rand for defendant Holt Hauling & Warehouse Systems, Inc. (Messrs. Asbell, Ambrose, Ergood & Asbell, attorneys; Mr. Harry D. Ambrose, Jr. of counsel).
Mr. Richard A. Tanner for defendant South Jersey Port Corporation (Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel, attorneys; Mr. James L. Melhuish of counsel).
ROSENBERG, J.S.C.
This is a motion for summary judgment brought by defendant and third-party plaintiff Holt Marine Terminal, Inc. (H.M.T.) to dismiss the complaint, cross-claims and other claims against it in the instant lawsuit. The court rejected a previous application for the same relief based on different grounds in a prior opinion containing a full statement of the salient facts of this case. It is necessary to restate only those facts which are particularly relevant to this motion.
As the result of a fire on August 6, 1971 at the Holt Hauling & Warehouse Systems, Inc. marine terminal compound in Gloucester City, N.J., goods owned consigned to or shipped by the various plaintiffs were destroyed. Action was instituted *313 to recover for this loss by complaint filed July 25, 1972. Service was made on defendant Holt Hauling & Warehouse Systems, Inc., on August 11, 1972. H.M.T., the terminal operator and a subsidiary of Holt Hauling, was not named as a party until the second amended complaint filed June 21, 1973 on leave granted by order dated June 19, 1973. Since that time a third amended complaint has been filed, litigation has been removed to the federal court and then remanded to the state court, and various cross- and counterclaims have been asserted. The matter was pretried on October 10, 1974 and is scheduled to go to trial on April 14, 1975.
H.M.T. bases its motion on the fact that the goods destroyed in the fire were involved in marine commerce and therefore were shipped under bills of lading issued by the carriers. Although original documents apparently were destroyed in the fire, defendant Retla Steamship Co. has provided sample bills of lading which the parties agree reflect the terms of the bills destroyed. On the reverse side of the bills are various terms which are applicable to carriage of the goods. Paragraphs 19 and 24 of those terms are particularly relevant:
19. In any event the carrier and the ship shall be discharged from all liability in respect of loss, damage, delay, or any other claim concerning the goods or their carriage, including but not limited to, any claims by preceding or connecting carriers for contribution or indemnification for claims asserted against or paid by such other carriers, unless suit is brought within one year after the delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought until jurisdiction has been obtained over the carrier or ship by service of process or by an agreement to appear. Nothing shall be deemed a waiver of any of the provisions of this clause or Clause 18 except an express written waiver specifically referring thereto and signed by the carrier or its authorized agent. [Emphasis supplied]
24. In addition to those hereinabove listed as included in the term "carrier," the owners, managers, charterers, master, officers and crew members of the ship and the carrier's agents, servants, officers, stevedores, longshoremen, representatives, contractors, terminal operators, or others dealing with cargo destined for or discharged from the vessel or used, engaged or employed by the vessel and the carrier, and any substituted vessel or carrier, whether any of them be acting *314 as carrier or bailee or as an independent contractor, shall have the benefit of all privileges and of all exemptions, immunities from, and limitations of liability granted to carrier in this bill of lading, or by laws applicable to the carrier, including, but not limited to, those limitations set forth in clauses 17 and 19 of this bill of lading, and the carrier shall be deemed to contract for the benefit of all such parties in this regard. Protection extended to third persons in the foregoing are granted to the extent permitted by law or contract, but in no event give rise to any liability of the carrier to such third persons. [Emphasis supplied]
H.M.T. reasons that since the claims relate to losses from the August 6, 1971 fire the subject goods must have been delivered no later than that date. It argues that under the above-quoted terms any action for loss against it must be commenced within the one-year limitations period and that since it was not joined in the suit until June 1973, nearly two years after the last possible delivery date, all claims against it are barred. Plaintiffs and codefendants raise various arguments in opposition, claiming that fact questions exist making summary judgment inappropriate and that under the so-called "discovery" rule and our court rules by which amended pleadings relate back to the filing date of the original pleading the terms of the limitations provision are satisfied and the action is not barred. They also contend that the substantive effect of the terms of the bills of lading should not operate to defeat their respective claims.

I
There is no question but that action against H.M.T. was commenced well beyond the limitations period specified in the bills of lading. Under the circumstances, however, this fact alone is not dispositive of the motion. Although H.M.T was not joined until June 1973 the original complaint filed within one year of the fire named Holt Hauling & Warehouse Systems, Inc., H.M.T.'s parent company, as a party defendant. The affidavit of William B. McGuire *315 filed in support of the motion to amend the complaint wherein H.M.T. was named recites that it was not until shortly before leave to amend was sought that plaintiffs became aware of H.M.T. as a separate entity against whom their claims should be directed. Letters from Holt Hauling to plaintiff Evans Products Co. in which reference was made to "our terminal" and "our terminal Tariff" were written on the letterhead of Holt Hauling & Warehouse Systems, Inc. and not H.M.T. The Federal Maritime Commission tariff in effect for the Holt terminal prior to the fire reflected the name Delaware Valley Terminal, Inc. and not H.M.T. At all times instant to this lawsuit the principals of Holt Hauling and H.M.T. were the same. For all these reasons it is argued that plaintiffs should not be penalized for failing to join H.M.T. until June 1973.
In Lopez v. Swyer, 62 N.J. 267 (1973), the court gave expression to the so-called "discovery" rule.
This doctrine * * * provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim. (at 272)
The rule is one of equity and calls upon the sound discretion of the trial court in weighing the claims of the aggrieved plaintiff on the one hand and defendant compelled to defend an action out of time on the other. "Where, as is often the case, they cannot be wholly reconciled, a just accommodation must be reached". Id. at 274. Such factors as "the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant" may all be considered in determining the application of the rule. Id. at 276. The overriding consideration is fairness to the parties.
*316 The instant case is distinguishable from Lopez in that here plaintiffs were aware of a basis for their claim but were merely uninformed as to the proper identity of a potential defendant. A relatively simple search of records of incorporation with the Secretary of State of New Jersey and surrounding jurisdictions (notably, Pennsylvania) may well have revealed that more than one Holt entity was involved in the Gloucester City operation. Despite this, the facts present a compelling case for giving plaintiffs some relief under the "discovery" rule. They were never apprised of the existence of H.M.T. by Holt Hauling prior to the time that leave was sought to amend the complaint. Past dealing with Holt Hauling gave no indication that the terminal was operated by any entity other than Holt Hauling. Most important, in view of the fact that both Holt Hauling and H.M.T. has the same principals there appears to have been no prejudice suffered by defendants. Of course, "prejudice" here refers to injury to the party and not inconvenience to his counsel. Allstate Ins. Co. v. Grilon, 101 N.J. Super. 322, 331 (Ch. Div. 1968). Such circumstances bring this case well within the spirit, if not the letter, of Lopez and mandate relief from the limitations language of the bills of lading. Accord, Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973). The question is the nature of such relief.
R. 4:9-3 deals with the relation back of amended pleadings to the time of the original pleading. It reads:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit relates back if the foregoing provision is satisfied and, within the the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in *317 maintaining his defense on the merits, and (2) he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
A look at the facts in this case indicates that all the criteria are satisfied for relating back the second amended complaint, and plaintiffs' claims against H.M.T., to the time of the original pleading. All claims against the Holt enterprises result from the August 6, 1971 fire. Because of the commonality of principals in the Holt companies it is clear that H.M.T. had effective notice of its potential liability when the first complaint was filed. Likewise, under the circumstances, the court perceives no prejudice to H.M.T. in having to defend itself in a suit arising from the fire. Finally, if H.M.T. did not know at the time of the original filing that it was a potential party to the suit, it should have realized it because of its close interrelationship with Holt Hauling. Application of the rule is underscored in Harr v. Allstate Ins. Co., 54 N.J. 287 (1969):
The rule should be liberally contrued. Its thrust is directed not toward technical pleading niceties, but rather to underlying conduct, transaction or occurrence giving rise to some right of action or defense. When a period of limitation has expired, it is only a distinctly new or different claim or defense that is barred. Where the amendment constitutes the same matter more fully or differently laid, or the gist of the action on the basic subject of the controversy remains the same, it should be readily allowed and the doctrine of relation back applied. [at 299]
Accord, Rooney v. Coraggio, 95 N.J. Super. 112 (App. Div. 1967), certif. den. 50 N.J. 89 (1967); Bradley v. Powles, 90 N.J. Super. 550 (App. Div. 1966), certif. den. 47 N.J. 422 (1966); Avdel Corp. v. Mecure, 58 N.J. 264 (1971); Farrell v. Votator Div. of Chemetron Corp., supra.
Consideration of the circumstances in relation to the provisions of R. 4:9-3 and the "discovery" rule suggests a "just accommodation" between the interests of all parties in the claims asserted against H.M.T. The cause of action *318 against the movant first expressed in the second amended complaint may be viewed as having accrued at the time of the fire and having been first expressed in the original complaint filed July 25, 1972. Although H.M.T. was not made a party to the suit until a period well beyond the limitations period, it is held as a matter of law that claims against it relate back to the original filing. It thus becomes necessary to determine the effect of the limitations language in the bills of lading on claims against H.M.T. dating from July 25, 1972.

II
H.M.T. seeks application of the terms of the bills of lading as a third-party beneficiary of the contract reflected in the bills entered into by plaintiffs and defendant ocean carriers. See paragraph 24, Retla bill of lading, supra. It is manifestly clear from paragraph 24 that the parties to the bills of lading intended for the benefits of the bills to apply to specified third-parties as well as to themselves. Both by statute and the cases it is a principle of long standing that in such a situation the third-party may maintain an action on the contract and claim relief under its terms. N.J.S.A. 2A:15-2; Republic Factors, Inc. v. Carteret Work Uniforms, 24 N.J. 525 (1957); Graybar Elec. Co. v. Continental Cas. Co., 50 N.J. Super. 289 (App. Div. 1958); Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E. & A. 1940). H.M.T. thus has good standing to invoke terms of the bills.
The bills of lading in question contain specific provisions incorporating the Carriage of Goods by Sea Act (C.O.G.S.A.), 46 U.S.C.A. § 1300 et seq. The terms of the act include a limitation period for commencing actions expressed in § 1303(6): "In any event the carrier and ship shall be discharged from all liability in respect of loss or damages unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered * * *." Clause 19 of the bills is patterned upon this *319 section and extends to H.M.T. as third-party beneficiary under the terms of clause 24. However, C.O.G.S.A. pertains only to the period of time during which the goods are on board ship, 46 U.S.C.A. § 1301 (e). Thus, although C.O.G.S.A. is encompassed within the bills of lading, the time-for-suit term does not apply ex proprio vigore to claims arising from events after the goods were discharged from the carriers. J. Aron & Co. v. The Askvin, 267 F.2d 276 (2 Cir.1959); Empacadora Puertorriquena de Carnes v. Alterman Tr. Line, 303 F. Supp. 474 (D.P.R. 1969). The effect of this is that the limitations language only has the impact of a contractual limitation to liability and not a statutory limitation.
N.J.S.A. 12A:7-309 (3) expressly provides that bills of lading may contain "reasonable provisions" governing the time in which actions under the bills may be commenced. Contractual limitation periods of one year for bringing suit have consistently been held to be reasonable. J. Aron & Co. v. The Askvin, supra; Ingram v. Weir, 166 F. 328 (C.C.E.D. Pa. 1909); Lagerloef Trad. Co. v. United States, 43 F.2d 871 (S.D.N.Y. 1930); Sapinkopf v. Cunard S.S. Co., 254 N.Y. 111, 172 N.E. 259 (Ct. App. 1930), cert. den. 282 U.S. 879, 51 S.Ct. 83, 75 L.Ed. 776 (1930); United Merchants & Mfrs., Inc. v. United States Lines Co., 204 Misc. 989, 126 N.Y.S.2d 560 (City Ct. 1953); Annotation, "Validity of Contractual Time Period, Shorter Then Statute of Limitations, For Bringing Action," 6 A.L.R.3d 1197, § 6 at 1228 (1966). Although there is no case law in New Jersey dealing with the one-year limitations period, the authority from other jurisdictions is persuasive. It is held that the one-year limitation period for commencing suit is "reasonable" under N.J.S.A. 12A:7-309(3) and, therefore, valid under that statute.
In addition to the one-year period for bringing suit clause 19 of the bills of lading provides that "suit shall not be *320 deemed brought until jurisdiction has been obtained over the carrier or ship by service of process or an agreement to appear." In the present case this qualification to the limitations period has a profound potential impact. Since all claims against H.M.T. are predicated on its having custody of goods at the time of the fire, the goods must have been delivered no later than August 6, 1971, the date of the fire. Service of process was not perfected on Holt Hauling (and, by relation back, on H.M.T.) until August 11, 1972  more than one year after the last delivery date. If the effective date for commencement of the suit was August 11, 1972 plaintiffs' claims against H.M.T. would appear to be barred by the contractual limitations period. However, the original complaint was filed on July 25, 1972, within a year of the delivery cut-off date. Under R. 4:2-2 of our court rules "a civil action is commenced by filing a complaint with the court" (emphasis supplied). Thus, there is presented the problem of the effect of R. 4:2-2 vis a vis the language in the bills specifying the commencement date of actions brought on the bills. The juxtaposition of the language of clause 19 with the dates when the complaint was filed and served makes this question a unique one.
It is well settled in this State that the power to promulgate rules of court is vested in the Supreme Court. N.J. Const. (1947), Art. VI, § II, par. 3. Such rules extend to matters of practice, procedure and administration and as such are not subject to overriding legislation. Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); United States Pipe, etc., Co. v. United Steelworkers of America, 59 N.J. Super. 240 (App. Div. 1960); Busik v. Levine, 63 N.J. 351 (1973). Although there is statutory authority in N.J.S.A. 12A:7-309(3) for the one-year time-for-suit provision the statute can not provide a basis for specifying the time or manner by which an action is "commenced". This principle was recognized in an admiralty action brought in federal court in United Nations Relief & R. Adm. v. The *321 Mormacmail, 99 F. Supp. 552 (S.D.N.Y. 1951), where the court observed (at 554) that "the issuance of process has no bearing on the determination of when a suit is commenced in a federal court under a federal statute." By the same token the service of process has no bearing on when a suit is commenced in state court under the state court rules. Such a matter is indisputably one of procedure and not substantive law and therefore is in the purview of the Supreme Court and not the Legislature or the parties. Since federal law is not directly applicable to the circumstances here, the parties' contractual undertakings must be tested against state law. By availing themselves of our courts parties become bound by our court rules. R. 4:2-2 applies to all civil actions, including those arising under terms of bills of lading. Thus, the portion of clause 19 of the bills establishing service of process as necessary to commencement of suit is void. Insofar as N.J.S.A. 12A:7-309(3) permits the parties to specify a time and manner for instituting actions at variance with R. 4:2-2 it, too, is without effect. As a matter of law, under R. 4:2-2 the action against Holt Hauling (and H.M.T.) was commenced with filing of the complaint on July 25, 1972 and not with service of process on August 11, 1972.
In view of this holding it follows that under the terms of the bills of lading action against H.M.T. may be barred as to claims arising on goods delivered before July 25, 1971. Action is not barred for goods delivered after that date. The proofs currently before the court do not show the delivery dates of the specific lots of goods lost in the fire. Thus, there exists a genuine issue of material fact as to whether some or all of the goods destroyed in the August 6, 1971 fire were delivered prior to July 25, 1971. Motion for summary judgment therefore must be denied since the fact question makes it impossible to determine whether H.M.T. is entitled to the relief it seeks as a matter of law. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).