205 N.J. Super. 582 (1985)
501 A.2d 596
NEW JERSEY DISTRICT COURT ASSOC., INC., JACK SPAETH, SR., JACK SPAETH, JR., R. EUGENE GLAB, SHARON L. CHERNIN, AND WAYNE VANDERHOOF, PLAINTIFFS,
v.
NEW JERSEY SUPREME COURT AND ROBERT D. LIPSCHER, ADMINISTRATIVE DIRECTOR OF THE COURTS, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
June 5, 1985.
*584 Seymour Chase for plaintiffs (Chase & Chase attorneys).
Joseph L. Yannotti, DAG for defendants (Irwin I. Kimmelman attorney).
CIOLINO, A.J.S.C.
On April 19, 1985, plaintiffs commenced this action by filing an order to show cause and verified complaint seeking to enjoin the New Jersey Supreme Court and the Director of the Administrative Office of the Courts from implementing service of process by mail in the Special Civil Part in accordance with orders of the Supreme Court dated January 4, 1985, and February 20, 1985. Following oral argument, the court signed the order to show cause, but denied injunctive relief. Plaintiffs' appeal of that denial was likewise rejected by the Appellate Division on April 22, 1985. The plaintiffs challenge the service by mail program alleging that it exceeds the Supreme Court's rule-making powers and violates both state and federal constitutional guarantees of due process.
On the return day of the order to show cause, defendants moved for summary judgment alleging that the issues presented are legal in nature and that no geniune issue of material fact exists.
[I]t is the movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact ... All inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated ...
[I]f the opposing party offers no affidavits or material in opposition, or only facts which are immaterial or of insubstantial nature, a mere scintilla [citations omitted] he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact.
Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954).
The Court agrees with the defendants' position that the questions presented herein are inherently legal. When certain *585 facts are necessary to support a legal conclusion they are uncontroverted. This case is, therefore, ripe for summary judgment.

I. SUPREME COURTS POWER TO REGULATE SERVICE OF PROCESS
Article VI, Section 2, Paragraph 3 of the New Jersey Constitution (1947), granting plenary power to the Supreme Court to administer the courts by fashioning rules of practice and procedure, provides:
3. Supreme Court, rules; admission to practice of law; discipline of persons admitted.

The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted.
N.J. Const. art. VI, § 2, par. 3.
Relative to the Supreme Court's service by mail orders, this constitutional provision raises three questions. First, what are the parameters of this constitutional grant? Second, does service by mail come within the Court's rule-making province? Third, if there is a conflict between this constitutional provision as it pertains to service by mail and N.J.S.A. 2A:18-5[1], how is it resolved?

A. The Scope of Article VI, Section 2, Paragraph 3.
The issue in Winberry v. Salisbury, 5 N.J. 240 (1950), cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950), concerned a conflict between a statute and a court rule. The court rule limited the time allowed for taking an appeal to 45 days, while the conflicting statute permitted an appeal to be taken within one year. The Winberry Court held that, "the rule-making power of the Supreme Court is not subject to overriding *586 legislation, but that it is confined to practice, procedure and administration as such." Id. at 255.
In construing its rule-making authority, the Court made the following evaluation:
Article VI, Section II, paragraph 3 of the new Constitution not only gives the Supreme Court the rule-making power, but it imposes on the Supreme Court an active responsibility for making such rules  "The Supreme Court shall make rules." If there were any doubt as to the continuous nature of the rule-making power, such doubt would be resolved by the imposition of the positive obligation on the Supreme Court to make rules for all the Courts.
Id. at 245.
This passage leads to the conclusion that the Supreme Court is not simply permitted to make rules, but is vested with an affirmative duty to promulgate rules and regulations governing the administration of the courts. In re Court Budget and Court Personnel, 81 N.J. 494 (1980) (the Court held that inherent in its rule-making power is the authority to compel the appropriation of funds and personnel necessary for the efficient administration of justice); State v. Leonardis, 73 N.J. 360 (1977) (the Court held that the implementation of the pretrial intervention program is within its rule-making powers); Passaic County Probation Officers Association v. County of Passaic, 73 N.J. 247 (1977) (the Court held that the regulation and superintendence of probation officers is within its rule-making power); Busik v. Levine, 63 N.J. 351, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (the Court-propounded rule concerning prejudgment interest in tort cases, was held properly within the scope of its rule-making power).
The plain language of the New Jersey Constitution read in conjunction with a survey of the case law, leaves no room for doubt regarding the Supreme Court's rule-making authority. The power is plenary in all matters touching practice, procedure and administration of the courts.

B. Procedural Law -vs- Substantive Law
The power to promulgate rules is restricted to the realm of practice and procedure. In Winberry, 5 N.J. at 248, the Court observed:

*587 The phrase "subject to law" in Article VI, Section II, paragraph 3 of the Constitution thus serves as a continuous reminder that the rule-making power as to practice and procedure must not invade the field of the substantive law as such ... [The courts] are not to make substantive law wholesale through the exercise of the rule-making power.
The question therefore, is whether the service by mail orders can be characterized as procedural rules or as substantive law? A procedural rule can and often will have an impact or effect upon substantive rights and still be a rule of procedure. See State v. Molnar, 81 N.J. 475, 488 (1980); State v. Leonardis, 73 N.J. at 372-373; Busik v. Levine, 63 N.J. at 364; State v. Linares, 192 N.J. Super. 391, 397 (Law Div. 1983).
As noted above, the Court has fashioned rules creating, affecting, or governing a variety of areas such as pretrial intervention, prejudgment interest, probation officers, medical malpractice panels and court personnel. The service by mail rule does not determine in and of itself the outcome of the proceeding. Service of process is but one step in a series of steps in the ladder to final determination and as such, it is procedural in nature. See Busik, 63 N.J. at 371; Suchit v. Baxt, 176 N.J. Super. 407 (Law Div. 1980). As a final observation, rules for service of process have been historically and indisputably governed by the Supreme Court. See Rules Governing the Courts of the State of New Jersey, R. 4:4; R. 5:4; R. 6:2.

C. Conflict Between Service By Mail and N.J.S.A. 2A:18-5.
N.J.S.A. 2A:18-5 provides:
All process issued out of a county district court shall be served only by the sergeant at arms of the court or such officer as shall be especially designated by the judge or in courts having branch parts, the presiding judge of the court.
While the New Jersey Constitution's grant of power to the Supreme Court over practice and procedure is plenary, it is "subject to law." N.J. Const. art. VI, § 2, par. 3. "`[S]ubject to law' cannot be taken to mean subject to legislation." Winberry, 5 N.J. at 245. Thus, the Court in Winberry concluded that "subject to law" means subject to substantive as distinct *588 from procedural law, Id. at 247, and that the Court's rule-making authority, in the face of conflict, supercedes overriding legislation. Id. at 255. Passaic County Probation Officers' Association v. County of Passaic, 73 N.J. 247 (1977); George Siegler Company v. Norton, 8 N.J. 374 (1952); Sears, Roebuck and Company v. Katzmann, 137 N.J. Super. 106 (App.Div. 1975); McCoy Co., Inc. v. S.S. "Theomitor III", 133 N.J. Super. 308 (Law Div. 1975).
As stated by Chief Justice Vanderbilt, "[c]omplete power and responsibility in the judiciary are concepts quite inconsistent with the notions of overriding legislation." Winberry, 5 N.J. at 249. Any other construction would render the Court's constitutional power over practice and procedure ephemeral at best, would severely distort the separation of powers concept, and would put at risk the very independence of the judicial branch of government. It is therefore this Court's determination that the service by mail orders are controlling as they conflict, or appear to conflict, with N.J.S.A. 2A:18-5.

II. THE CONSTITUTIONAL ADEQUACY OF SERVICE BY MAIL
The standard for adequacy of notice in terms of satisfying the due process clause of the Fourteenth Amendment is set forth in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Court articulated the litmus test for adequate notice as follows: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314, 70 S.Ct. at 657. The Mullane Court noted that while personal service is the classic form of notice, it is not mandated by the due process clause. The Court, in rejecting notice by publication, stated:

*589 The statutory notice[2] to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances, it is not reasonably calculated to reach those who could easily be informed by other means at hand. However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication.
Id. at 319, 70 S.Ct. at 659. See also Greene v. Lindsey, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982).
In O'Connor v. Altus, 67 N.J. 106, 127 (1975), Justice Clifford restated the standard outlined in Mullane, and noted that, "[w]ithin that constitutional limitation it is clear that states have the right to forge whatever service of process rules they see fit." Therefore, to withstand constitutional scrutiny, a method of service of process may be employed so long as it is reasonably calculated to inform interested parties of the pending action.
In Township of Montville v. Block 69, Lot 10, 74 N.J. 1 (1977), the issue presented was whether notice by publication in a tax foreclosure action survived constitutional inspection, where the foreclosing municipality could have furnished notice by mail. Justice Pashman, following Mullane, stated: "[W]e hold under both state and federal constitutional guarantees, that where an owner's name and address appear on the municipality's tax rolls, notice must be sent by mail before a taxpayer's right to redeem his property may be foreclosed." Id. at 19-20. See also Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).
Based upon the foregoing discussion of due process no constitutional impediment to service by mail exists, provided there is some reasonable expectation that the notice will be received by the party at the address. This Court is satisfied, predicated upon uncontroverted certifications filed on behalf of *590 defendants, that the service by mail orders pass constitutional muster.

III. TERMINATION OF INDIVIDUAL PLAINTIFF PROCESS SERVERS
The complaint sets forth that plaintiff is a statewide association comprised of a majority of process servers in the Special Civil Part. Plaintiffs allege that defendants' service by mail orders "will place the continued employment of many individual members of the plaintiff association in jeopardy due to the virtually complete elimination of the statutory and constitutional requirements for personal service of initial process, which service they effectuated." The three individual plaintiff process servers Messrs. Spaeth, Spaeth, Jr. and Glab were terminated by the Monmouth County Assignment Judge, effective May 1, 1985. Defendants acknowledge that termination of these plaintiffs was a direct result of defendants' expansion of the service by mail project in Monmouth County.
The legal characterization of the three plaintiffs' employment status weighs heavily upon the Court's disposition. The only evidence submitted on this issue is a certification of the Monmouth County Special Civil Part Clerk. That certification establishes that the three process servers were constables (later changed to District Court officers) who served at the pleasure of the Assignment Judge pursuant to R. 1:33-4(e). None of these individuals held a classified position within the Civil Service. They were not on county payroll nor did they receive pension or health care benefits. As to any other members of plaintiff organization, there is nothing in the record concerning their employment status or the effect of service by mail upon their continued employment.
Plaintiffs claim that the challenged orders jeopardize their continued employment, and deprive them of a property interest without due process of law. The seminal case concerning constitutionally protected property interests is Board of Regents *591 of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The petitioner, a non-tenured university professor, was not rehired after the expiration of a one year employment contract. The Court held: "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709. The issue of whether a public employee has a legitimate claim of entitlement to continued employment, thereby invoking the due process shield, is addressed in both federal and New Jersey state court opinions. See DeTore v. Local 245, Jersey City Public Employees Union, 615 F.2d 980 (3d Cir.1980); Mozier v. Board of Education of Cherry Hill, 450 F. Supp. 742 (D.N.J. 1977) (the courts followed Roth finding no cognizable property or liberty interest absent any contractual, statutory or implied right to continued employment.)
Nicoletta v. North District Water Supply Commission, 77 N.J. 145 (1978), is distinguishable as it predates the amendment to N.J.A.C. 4:1-8.14(b)(6).[3] Since the amendment to the Administrative Code of October 4, 1978, Tuch v. College of Medicine and Dentistry, 177 N.J. Super. 101 (App.Div. 1980) and Grexa v. State of New Jersey, 168 N.J. Super. 202 (App.Div. 1978) have been reported. In those cases, two managerial level public employees, unprotected by Civil Service classification, statutory tenure or contractual commitment, challenged their terminations as violative of their due process rights. On both occasions, the courts found no cognizable property or liberty interest implicated because of the aforesaid amendment to N.J.A.C. 4:1-8.14(b)(6).
*592 I find that the process servers involved in this matter, appointed pursuant to R. 1:33-4(e), serve at the will of the Assignment Judge. They have no statutory right to tenure or employment as process servers for any fixed term. No other classification of process server is before the Court.
For the reasons set forth above, summary judgment on behalf of defendants is granted.
Judgment is to be entered in accordance with this opinion with counsel for defendants preparing the necessary order.
NOTES
[1] N.J.S.A. 2A:18-5 provides: All process issued out of a county district court shall be served only by the sergeant at arms of the court or such officer as shall be especially designated by the judge or in courts having branch parts, the presiding judge of the court.
[2] N.Y. Banking Law § 100-c(12) provided that after filing a petition for judicial settlement of trust accounts the petitioner "shall" provide notice by newspaper publication.
[3] N.J.A.C. 4:1-8.14(b)(6) was amended to provide that termination can no longer preclude a public employee from future public employment unless that employee was accorded notice and an opportunity to be heard prior to termination.