114 N.J. Super. 343 (1971)
276 A.2d 382
SIDNEY LICHTER, FREDERICK J. JOHNSON, III, GERALD DONIS, ALEXANDER JASMAN, ROBERT SOKOL AND HAROLD A. RAPPAPORT, WHO SUE ON BEHALF OF THEMSELVES AND ALL OTHER CERTIFIED SHORTHAND REPORTERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
THE COUNTY OF MONMOUTH, AND ALL OTHER COUNTIES SIMILARLY SITUATED, AND THE TOWNSHIP OF MIDDLETOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND ALL OTHER MUNICIPAL CORPORATIONS SIMILARLY SITUATED, INDIVIDUALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1970.
Decided April 13, 1971.
*344 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Michael D. Farren argued the cause for appellants (Messrs. Saling, Moore, O'Mara & Coogan, attorneys).
Mr. Lawrence A. Carton, III, argued the cause for respondent County of Monmouth (Messrs. Pillsbury, Barnacle, Russell & Carton, attorneys; Mr. John M. Pillsbury, County Counsel; Mr. John G. Colannino, on the brief).
*345 Mr. Robert H. Otten argued the cause for respondent Township of Middletown (Messrs. Crowell, Crowell & Otten, attorneys; Mr. Whitney Crowell, Township Attorney; Mr. David W. Clark, on the brief).
Mr. Stephen Skillman, Assistant Attorney General, argued the cause amicus curiae (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. David S. Litwin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by LEWIS, P.J.A.D.
Plaintiffs, six certified shorthand reporters (reporters), who instituted this action on behalf of themselves and all other reporters similarly situated, appeal from an order of the Chancery Division granting the motion of defendant Township of Middletown (Middletown) for a summary judgment dismissing plaintiffs' complaint.
The reporters instituted suit against Middletown and the County of Monmouth (Monmouth) to enjoin the installation and use of sound recording devices in juvenile and domestic relations courts, county district courts and municipal courts. After a hearing on cross-motions for summary judgment by the reporters and Middletown, the Chancery Division determined that "both defendants have a right to such judgment as a matter of law" and entered an order granting Middletown's motion.
On appeal from that order the reporters here argue that (1) R. 5:10-6 and R. 6:12-1 and the New Jersey Supreme Court order dated April 1, 1969, requiring the installation of sound recording devices in certain municipal courts, are contrary to law and void, and (2) the rule-making power of our Supreme Court does not extend to the positions of court reporters.
In pertinent part, R. 5:10-6 states that the Administrator of the Courts "shall provide for the verbatim recording of all hearings and trials in all juvenile and domestic relations courts," except in certain instances not here relevant, *346 "either by an official or temporary stenographic reporter * * * or by an electronic sound recording device." A similar provision, applicable to proceedings in all county district courts, is provided by R. 6:12-1. The order promulgated by our Supreme Court on April 1, 1969 requires that
* * * on or before January 1, 1970, provision shall be made for the sound recording of all proceedings in all municipal courts in municipalities having a population of more than 20,000 according to the 1967 population estimates published by the Division of Economic Development of the New Jersey Department of Conservation and Economic Development * * *.
The reporters argue that in 1940 the Legislature, by N.J.S.A. 45:15A-1 et seq., "elevated the `art and practice' of shorthand reporting to the dignity of a profession" and thus, as in many other jurisdictions, recognized their individual status to be that of State or public officers or officials. See 82 C.J.S. Stenographers § 2 at 1053-1054. They urge that this rationale is implemented by N.J.S.A. 2A:11-11 which, as originally enacted, provided:
The supreme court shall appoint such number of official stenographic reporters (referred to in this article as reporters), either on a full-time or part-time basis, as may be necessary from time to time to properly perform the work specified in this article for the several parts of each division of the superior court and for the county courts. The supreme court may remove any reporter so appointed at any time for cause and appoint another in his place.
The county judge or county judges, as the case may be, with the approval of the board of chosen freeholders of the county may appoint an official stenographic reporter for the county court of such county * * *. [Emphasis added]
This legislation was amended in 1967 to read:
The Supreme Court shall appoint such number of official court reporters (referred to in this article as reporters), to serve on a full-time basis, as may be necessary from time to time to report proceedings in the Superior Court, the County Courts, and such other proceedings as the Supreme Court may direct. The Supreme Court may remove any reporter so appointed at any time for cause. [Emphasis added]
*347 Plaintiffs misconceive the purport of this legislation. To begin with, N.J.S.A. 45:15A-1 et seq. does not pertain to the method of court reporting but, rather, to the regulation of the official reporting profession inter se. See Statement to Assembly Bill No. 397 (1940); cf. Statement to Senate Bill No. 262 (1969). Moreover, it is plain that N.J.S.A. 2A:11-11 was not enacted to create a vested right in a particular profession but, rather, to allow the Supreme Court to provide for a method of accurate recordation where necessary. Cf. Statement to Assembly Bill No. 876 (1966); compare Statement to Assembly Bill No. 397 (1940); Statement to Senate Bill No. 262 (1969).
At the time this basic legislation was adopted, tape recorders were still in the experimental stage. Note Stewart, Magnetic Recording Techniques, at v (1958). In light of the modern developments of tape recording and the ever-increasing volume of appeals from the nonconstitutional courts, our Supreme Court has determined that stenographic reporters are not "necessary" for the transcription of proceedings in the particular courts governed by the rules and court order here under review.
The use of the word "shall" in the phrase "shall appoint * * * reporters" in N.J.S.A. 2A:11-11 is of no controlling significance because, in order to execute the clear intent of the Legislature, the word "shall" must be presumed to be directory. See Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 392 (1959), for the proposition that "shall" and "may" are held to be interchangeable when necessary to give effect to the language and intent of the Legislature. Furthermore, assuming, arguendo, that the statute does mandate that only reporters be allowed to report proceedings in the Superior and County Courts, it is evident that it does not compel their usage in the courts affected by the challenged rules and court order. As originally enacted, the statute was not even arguably applicable, and, to the extent that it has become applicable by the 1967 amendment, its language is manifestly permissive.
*348 Plaintiffs recognize that the Legislature conferred discretion upon the Supreme Court in determining which additional proceedings shall be reported but claim that the statutory enactments did not vest any discretion in the Supreme Court as to "the method of reporting." It is contended that the court rules and order under review, which were not promulgated until after the aforementioned amendment, contravene the legislative intent of the statute. In support of this strained hypothesis, they cite generally irrelevant excerpts from the statement accompanying the 1967 amendment.
In the main, plaintiffs assert that their official positions cannot be classified as practice or pleading within the rationale of Winberry v. Salisbury, 5 N.J. 240, cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950), and that to consider their positional rights within the court's rule-making jurisdiction "would be a usurpation of the Legislature's power to create laws for the protection of its citizens." We find this argument to be devoid of any rational merit.
This is not a Winberry case. The jurisdiction of the Chief Justice and the Supreme Court over court reporters is not dependent upon the court's power to supervise practice and procedure "subject to law" but, rather, the power to make rules governing the administration of the courts. N.J. Const., Art. VI, § II, par. 3. Within the meaning and concept of that constitutional provision, whether court proceedings should be recorded and, if so, by what means, is a matter within the ambit of the administration of the courts. The constitutional administrative power is absolute and unqualified, and our Supreme Court has characterized it as the "plenary responsibility for the administration of all courts in the State." State v. De Stasio, 49 N.J. 247, 253, cert. den. 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967). See In re Mattera, 34 N.J. 259, 271-272 (1961). See also N.J. Const., Art. XI, § IV, par. 5; cf. N.J. Const., Art. VI, § VII, par. 1. Additionally, compare Kagan v. Caroselli, *349 30 N.J. 371, 379 (1959), wherein the court observed that "[t]he Constitution places the administrative control of the municipal court in the Supreme Court and the Chief Justice. Art. VI, § 2, par. 3; Art. VI, § 7, par. 1. There is no room for divided authority."
The intent of the 1947 Constitutional Convention was to vest the Supreme Court with the broadest possible administrative authority. Conceptually, such authority encompasses all facets of the internal management of our courts. Cf. Mattera, supra, 34 N.J. at 272. This was made clear by the Committee on the Judiciary which considered it a fundamental requirement that the courts be vested with "exclusive authority over administration." 2 Proceedings of the Constitutional Convention of 1947, at 1180, 1183. See also the monograph of Morris M. Schnitzer entitled "Judicial Administration," Id. at 1651, in which the author listed the court reporters as among the essential nonjudicial officers over whom the court must exercise control and without whom it could not properly function. "Judicial Control Over Non-Judicial Officers Concerned With the Administration of Justice," Id. at 1656. Other jurisdictions likewise recognize that court reporting is an administrative matter and that its supervision is routinely administrative. See, e.g., Hydramotive Mfg. Corp. v. Securities and Exchange Com'n, 355 F.2d 179, 180 (10 Cir.1966).
We conclude that R. 5:10-6, R. 6:12-1 and the Supreme Court order of April 1, 1969 were adopted pursuant to the court's broad constitutional power and, accordingly, should be enforced.
Judgment affirmed.