642 A.2d 1062

STATE IN THE INTEREST OF J.M.

Superior Court of New Jersey
Chancery Division Family Part
Hudson County

Decided: February 22, 1994.

---

2c that was required to yield. The point, of course, is that whenever there is statutory conflict, the overriding legislative intent must be determined on a case by case basis.

594

*Jeffrey Nielsen,* for the juvenile.

*Carmen Messano,* Hudson County Prosecutor, *(Ramon De La Cruz,* Assistant Prosecutor, for the State).

JOSE L. FUENTES, J.S.C.

In this case the court is asked to apply the recently amended sentencing provisions for juvenile motor vehicle offenses, *N.J.S.A.* 2A:4A–43e(2) and 2A:4A–43f, to J.M. These sections mandate a minimum term of incarceration for certain repeat offenders, and preclude the court from crediting such repeat offenders with time served pending adjudication, to the extent that it would be deducted from the mandatory minimum term. The relevant statutory provisions were enacted in June of 1993 and have yet to be subject to formal judicial review. This case raises questions of constitutional dimension which are of first impression in this jurisdiction.

On March 16, 1993, J.M. plead guilty to acts which, if committed by an adult, would have constituted Unlawful Taking of a Means of Conveyance (Joyriding) in violation of *N.J.S.A.* 2C:20–10. At that time he was sentenced to six months probation. On January 28, 1994, J.M. plead guilty to acts committed on July 16, 1993, which, if committed by an adult, would have constituted Receiving Stolen Property in violation of *N.J.S.A.* 2C:20–7. The stolen property involved was a motor vehicle. It is for this offense that

J.M. must now be sentenced. As of this date, J.M. has spent 197 days in the Hudson County Youth House pending the disposition of this charge.

In June of 1993, the legislature amended *N.J.S.A.* 2A:4A–43 to provide:

> e. In addition to any disposition the court may impose pursuant to this section ... **the following orders shall be included in dispositions of the adjudications set forth below: (2) An order of incarceration** for a term of the duration authorized pursuant to this section ... **which shall include a minimum term of 60 days during which the juvenile shall be ineligible for parole, if the juvenile has been adjudicated delinquent for an act which, if committed by an adult, would constitute** ... **theft of a motor vehicle, in a case in which the juvenile has previously been adjudicated delinquent for an act which, if committed by an adult, would constitute unlawful taking of a motor vehicle** ... (emphasis added)

The legislature further amended this section to provide:

> f. (1) The minimum terms of incarceration required pursuant to subsection e. of this section shall be imposed regardless of the weight or balance of factors set forth in this section ... but the weight and balance of those factors shall determine the length of the term of incarceration appropriate, if any, beyond any mandatory minimum term required pursuant to subsection e. of this section. **No time spent in custody prior to adjudication of delinquency shall be considered as time served on a mandatory minimum term of incarceration pursuant to subsection e. of this section.** (emphasis added)

This legislative mandate directly contradicts the New Jersey Supreme Court's direction to all state courts that "(a) juvenile shall receive credit on the term of a custodial sentence for any time he has served in detention or court-ordered shelter care between apprehension and disposition." *R.* 5:21–3(e).

This case raises three distinct issues, one a matter of statutory interpretation and two questions of constitutional dimension.

## I. DO THE NEWLY AMENDED SENTENCING PROVISIONS APPLY TO J.M.?

*N.J.S.A.* 2A:4A–43e(2) mandates a minimum term of incarceration for all juveniles adjudicated delinquent of acts which, if committed by an adult, would constitute theft of a motor vehicle, who have previously been adjudicated delinquent of acts which, if

committed by an adult, would constitute unlawful taking of a motor vehicle. J.M. falls squarely into this category. His previous adjudication of delinquency on March 16, 1993 for "joyriding" constitutes an unlawful taking of a motor vehicle under the New Jersey Criminal Code (*N.J.S.A.* 2C:20–10). His current adjudication of delinquency for receiving a stolen motor vehicle constitutes a theft of a motor vehicle under the Code (*N.J.S.A.* 2C:20–7). The only question remaining is whether the fact that J.M.'s adjudication of delinquency for joyriding predated the passage of the new provisions affects their application to him. In other words, is J.M. a repeat offender, as defined by the newly amended *N.J.S.A.* 2A:4A–43e? Or did the legislature intend that the new provisions apply only to juveniles adjudicated delinquent of both the first and second offenses *after* the passage of the amendments in order to trigger the minimum mandatory penalties?

*N.J.S.A.* 2A:4A–43e(2) states that the minimum term of incarceration is mandatory in any "case in which the juvenile has previously been adjudicated delinquent for" the target offenses. This language, given its normal meaning, encompasses *any* previous adjudications for the listed offenses, not just those which postdate the passage of the act. The New Jersey Supreme Court has recognized that "statutory language should be given its ordinary meaning absent specific intent to the contrary." *Renz v. Penn Central Corp.,* 87 *N.J.* 437, 435 *A.2d* 540 (1981). Also, "(i)t is a settled rule of statutory construction that if the language chosen by the Legislature is plain and the result is not contrary to obvious legislative intent, the sole function of the court is to enforce it according to its terms." (citations omitted) *State v. Maguire,* 84 *N.J.* 508, 423 *A.2d* 294 (1980).

■ There is no legislative history to indicate that the intent of the legislature was contrary to the most common meaning of the language of the act. In the absence of anything indicating a contrary legislative intent, I hold that *N.J.S.A.* 2A:4A–43e(2) applies to any juvenile who has a previous adjudication of delinquency for unlawful taking of a motor vehicle or theft of a motor

vehicle, whether or not that previous adjudication predates the passage of the act. Therefore, J.M. must be sentenced to at least a minimum term of incarceration of sixty days.

## II. DOES THE EXISTENCE OF A CONTRARY COURT RULE INVALIDATE THE LEGISLATIVE PROVISION DENYING CREDIT FOR TIME SERVED AGAINST THE MANDATORY MINIMUM TERMS?

Having found that J.M. must be sentenced to a minimum term of sixty days, the question remains whether J.M. should be given credit for the time he has spent in the Hudson County Youth House awaiting resolution of the charges against him. The rules promulgated by the Supreme Court clearly direct the lower courts to credit both juveniles [1] and criminal defendants [2] with time served. The legislature now mandates in *N.J.S.A.* 2A:4A–43f(1) that juveniles required to serve a minimum term pursuant to subsection e. be deprived of credit for time served to the extent that it would diminish the minimum term.

■ *N.J. Const.* art. VI, § 2, ¶ 3 provides that "(t)he Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." The Supreme Court interpreted this provision in the landmark decision *Winberry v. Salisbury,* 5 *N.J.* 240, 74 *A.*2d 406 (1950), to mean that the rule-making power of the Supreme Court is confined to practice, procedure and administration, and, when exercised in those areas, is not subject to overriding legislation. However, the Court interpreted the phrase "subject to the law" to mean that, in areas of *substantive* law, Court rules must yield to legislation.

---

[1] See *R.* 5:21–3(e), *supra.*

[2] "The defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence." *R.* 3:21–8

The issue, then, is whether the crediting of time served to those sentenced to custodial sentences is a matter of procedural or substantive law. In *Winberry*, the Court defined substantive law as including "much more than legislation, it comprehends also the rights and duties which have come down to us through the common law." *Id.* at 248, 74 *A.*2d 406. It has also been said that if the Court rule will, in and of itself, determine the outcome of the proceeding, it is substantive; whereas if the rule provides but one step in the ladder to a final determination, it is procedural. *Suchit v. Baxt,* 176 *N.J.Super.* 407, 423 *A.*2d 670 (Law Div.1980). On the other hand, the courts have found the following issues to be matters of practice and procedure: motions to reopen judgments, *Borough of New Shrewsbury v. Block 115, Lot 4, Assessed to Hathaway,* 74 *N.J.Super.* 1, 180 *A.*2d 387 (1962); time limits for appeals of final judgments, *Winberry;* mandatory joinder of claims, *Ekalo v. Constructive Service Corp. of America,* 46 *N.J.* 82, 215 *A.*2d 1 (1965); all facets of the internal management of the courts, *Lichter v. Monmouth County,* 114 *N.J.Super.* 343, 276 *A.*2d 382 (App.Div.1971); all aspects of admission to the bar, the practice of law, the conduct of attorneys, and the attorney-client relationship, *Taylor v. Board of Education for School Dist. of City of Hoboken, Hudson County,* 187 *N.J.Super.* 546, 455 *A.*2d 552 (App.Div.1983).

■ Applying these principles to the issue at bar, I find that the crediting of time served is a matter of substantive law as opposed to a question of practice and procedure. The decision to grant or deny such credits is one of the decisions which will directly determine the duration of a convicted defendant's sentence. It is not merely one step in a series of procedural steps which may or may not affect the final sentence. In this way, it is unlike all of the issues discussed in the cases cited above which were found to be procedural in nature. Furthermore, the denial of time served credit, which effectively lengthens a convicted defendant's sentence, is a form of punishment for a crime. The extent of the punishment to be meted out for the commission of crimes has been

a matter traditionally deemed to be in the province of the policy-making, legislative branch of government. As such, it is substantive in nature, and not merely a matter of practice, procedure and administration as defined by the line of cases cited above. Therefore, I find that New Jersey Court Rule *R.* 5:21–3(e) must yield to the contrary legislative mandate of *N.J.S.A.* 2A:4A–43f(1), if that enactment is otherwise valid.

### III. IS THE DENIAL OF CREDIT FOR TIME SERVED UNDER *N.J.S.A.* 2A:4A–43f(1) AN UNCONSTITUTIONAL DEPRIVATION OF THE EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?

Having found that the legislature is not precluded from contradicting the current Court rules regarding credit for time served, it remains to be decided whether there are federal constitutional infirmities in the legislation at issue. *N.J.S.A.* 2A:4A–43f(1) denies credit for time served pending adjudication to the extent that it would reduce the mandatory minimum sentences imposed pursuant to *N.J.S.A.* 2A:4A–43e. Two distinct issues of equal protection are raised by this legislative scheme.

First, the legislation creates two classes of individuals who are otherwise similarly situated. The first class consists of juveniles who have been detained pending trial and who are adjudicated delinquent for acts which, if committed by an adult, would constitute a theft of a motor vehicle if they previously have been adjudicated delinquent for acts which, if committed by an adult, would constitute unlawful taking or theft of a motor vehicle. The second class is made up of adults who have also been detained pending trial, who have the same record of convictions and who are convicted of the same crime as the juveniles. The adults receive credit for the time they spent in county jail on the charge for which they are eventually convicted, pursuant to *R.* 3:21–8. On the other hand, pursuant to *N.J.S.A.* 2A:4A–43f(1), juveniles

who are otherwise in identical circumstances are not entitled to credit for the time they served in the county youth house.

▆ In *State in the Interest of W.M.*, 147 *N.J.Super.* 24, 370 *A.*2d 519 (App.Div.1977), the Appellate Division faced the issue of credit for time served for juveniles before the promulgation of *R.* 5:21–3(e). Relying on the landmark decision of *In re Gault*, 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967)[3], the court said:

> ... we perceive no reason why the juvenile should not receive credit for time spent in custody. It has not been suggested, nor can we conceive of a reason, why custody credit would be detrimental to the rehabilitative process of the juvenile. **Absent a cogent reason to treat the juvenile differently, we deem it a matter of fundamental fairness that the juvenile receive credit for predisposition custody.** *State in the Interest of W.M.*, 147 *N.J.Super.* at 26, 370 *A.*2d 519 (emphasis added).

I find the Appellate Division's holding of *W.M.* to be binding upon this court. The issue is essentially the same, and the reasoning is equally applicable to the case at bar. Although that court did not explicitly use equal protection analysis to arrive at its conclusion, it was implicit in its finding that granting credit for time served was a matter of "fundamental fairness." When the legislature treats two classes of individuals who are similarly situated differently, there must be a sufficient justification for doing so. How strong a justification is necessary depends on the nature of the classification.

▆ In this case, the legislature has made a distinction based on the age of the offender. Age distinctions are not subject to strict scrutiny, but they must have a rational relationship to a legitimate state interest. *Taxpayer's Assn. of Weymouth Tp.*, 80 *N.J.* 6, 364 *A.*2d 1016 (1976), *cert. denied*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1976). The legislature may have been attempting to achieve a legitimate objective when it enacted the amendments to *N.J.S.A.* 2A:4A–43. No doubt the recent increase in automobile

---

[3] *In re Gault* recognized that juveniles must be afforded the constitutional rights of right to counsel, notification of charges, privilege against self incrimination, confrontation and cross-examination.

thefts triggered the attention of the lawmakers, and the deterrence of such crime is certainly a legitimate state objective. However, to deprive juveniles of a right, to which adults who commit the identical offenses are entitled, is not a rational way to achieve that goal. Furthermore, this court agrees with the Appellate Division's finding in *W.M.* that there is no conceivable rehabilitative interest furthered by the denial of time served credit to juveniles. This being the case, the traditional reason for treating juveniles differently than adults (the rehabilitative goal of the juvenile justice system) is not available to justify this legislative enactment.

For these reasons, I hold that *N.J.S.A.* 2A:4A–43f(1) violates the equal protection guarantee of the Fourteenth Amendment of the United States Constitution, since the disparate treatment of juveniles and adults in this context is not rationally related to a legitimate governmental objective.

 There is a second equal protection problem raised by the enactment of *N.J.S.A.* 2A:4A–43f(1). By its terms, that section prohibits the court from crediting juveniles with time served pending adjudication to the extent that it would diminish the mandatory minimum sentences instituted pursuant to subsection e. This mandate causes a direct and obvious consequence: juveniles who are detained preadjudication will consistently serve longer periods of incarceration, for identical offenses, than juveniles who are released pending resolution of the charges. The legislature's choice to treat these two classes of individuals, who are otherwise in exactly the same position, having the same open charges and the same record of past adjudications, is not a suspect classification. For Fourteenth Amendment purposes, a suspect category must be based on an "immutable characteristic determined solely by the accident of birth." *State v. Senno*, 79 *N.J.* 216, 226, 398 *A.2d* 873 (1979). The disadvantaged group involved here does not meet this criterion. However, even non-suspect classifications are subject to judicial review in the form of the rational basis test. "... (T)he legislature may provide different

punishments for offenders convicted of the same crimes so long as there is some rational connection between the classification of offenders and a proper legislative purpose." *State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992). *N.J.S.A.* 2A:4A–43f(1) must pass this test to be valid.

Neither the New Jersey courts, nor the federal courts in the Third Circuit, have addressed the constitutional issues raised by the deprivation of time served credit. Courts in other jurisdictions, however, have been faced with the question in the context of adult criminal defendants. The majority have found that the equal protection clause requires that defendants be given credit for time served on the same charges for which they are later convicted. The failure to do so, these cases recognize, would be to unconstitutionally discriminate against defendants who are financially unable to attain release on bail. *Johnson v. Prast,* 548 *F.*2d 699 (7th Cir.1977); *United States v. Gaines,* 449 *F.*2d 143 (2d Cir.1971); *King v. Wyrick,* 516 *F.*2d 321 (8th Cir.1975); *Ham v. North Carolina,* 471 *F.*2d 406 (4th Cir.1973).

Fundamental fairness and the avoidance of discrimination ... dictate that an accused person, unable to or precluded from posting bail or otherwise procuring his release from confinement prior to trial should, upon conviction and commitment to a state penal facility, be credited as against a maximum and a mandatory minimum term with all the time served in detention prior to trial and sentence. Otherwise, such a person's total time in custody would exceed that of a defendant likewise sentenced but who had been able to obtain pretrial release. Thus, two sets of maximum and mandatory minimum terms would be erected, one for those unable to procure pretrial release from confinement and another for those fortunate enough to obtain such release. *Reanier v. Smith,* 83 *Wash.*2d 342, 517 *P.*2d 949, 951 (1974)

Of course, the holdings cited above are not binding upon this court. However, I find the reasoning in all of those decisions, as exemplified by the quoted language from the Washington State Supreme Court's decision in *Reanier,* to be persuasive. Furthermore, even though juveniles are not entitled to bail,[4] I find that the equal protection analysis performed by those courts is equally

---

[4] See *N.J.S.A.* 2A:4A–40.

appropriate in the context of the pretrial detention decisions made in our courts, pursuant to *N.J.S.A.* 2A:4A–34.

Juveniles who are awaiting adjudication of open charges are detained or released based on many criteria. Specifically, and in pertinent part, a juvenile may not be detained unless:

(1) Detention is necessary to secure the presence of the juvenile at the next hearing as evidenced by a demonstrable record of recent willful failure to appear at juvenile court proceedings or to remain where placed by the court or the court intake service; or

(2) The physical safety of persons or property of the community would be seriously threatened if the juvenile were not detained and the juvenile is charged with an offense which, if committed by an adult, would constitute a crime.

[*N.J.S.A.* 2A:4A–34c(1) and (2).]

Further, even if the above threshold criteria are met, the court must take into consideration the following factors when making its detention decisions:

(1) The nature and circumstances of the offense charged;

(2) The age of the juvenile;

(3) The juvenile's ties to the community;

(4) The juvenile's record of prior adjudications, if any; and

(5) The juvenile's record of appearance or nonappearance at previous court proceedings.

[*N.J.S.A.* 2A:4A–34e.]

Reviewing these criteria, it becomes clear that the reasons for which some juveniles are detained, and some released, pending resolution, will very often have little or nothing to do with actions which could be considered a rational basis for additional punishment.

For example, let us say that there are two juveniles. Both are charged with automobile thefts, and both have past adjudications for joyriding. One juvenile has lived in the same house for the past ten years, has an intact family unit at home, and has always been brought to all of his court dates by at least one of his parents. The other juvenile has moved from place to place all his life. Presently, he lives with an aunt, or maybe his grandmother, because his father is deceased, and his mother's whereabouts are

unknown. Since there is never anyone at home to encourage him to faithfully keep his court appointments, he has sometimes failed to appear. The first juvenile is released to his parents, with the condition that he observe a curfew and attend school. The other juvenile is detained. In his case, the state successfully argues that detention is necessary to secure his presence at subsequent proceedings, and that he poses a danger to the property of others.

Both juveniles are later adjudicated delinquent of the open car theft charges against them. Due to their records, they must each be sentenced to minimum of 60 days incarceration, pursuant to *N.J.S.A.* 2A:4A–43e(2). Both juveniles are so sentenced. The juvenile who has been detained pending resolution has already spent two months in the youth house. But, pursuant to *N.J.S.A.* 2A:4A–43f(1), he is not to be credited for his time there as against the sixty day minimum sentence. As a result, this juvenile spends 120 days incarcerated, whereas the first juvenile is incarcerated for 60 days.

The above scenario does not differ in any significant way from the facts faced by the courts in those jurisdictions which have already held that credit for time served must be given to adults to satisfy the constitutional guarantee of equal protection. With adults, the discrimination is against the indigent. In the case of the legislation now before the court, the discrimination would inevitably fall upon those juveniles whose lifestyles—most often for no fault of theirs—are such that they fit the statutory criteria for preadjudication detention. There is no qualitative difference between the poverty of the adults, on the one hand, and the life circumstances of the juveniles on the other. Neither is necessarily the fault of the individuals, and neither is legitimate targets of legislative sanction.

This court recognizes that pretrial detention has long been deemed a necessary evil, used in our criminal justice system as an administrative method to achieve the safe and efficient prosecution

of crime. However, it has been upheld solely in that context.[5] The existence of the system, then, provides no precedent to support the New Jersey Legislature's present attempt to turn it into a method of punishment by proscribing, albeit in limited circumstances, time served credit against later custodial sentences.

In light of all of these considerations, I find that there is no legitimate state interest served by the legislature's decision to eliminate credit for time served pursuant to *N.J.S.A.* 2A:4A–43f(1). If the legislature, as a matter of public policy, finds that certain offenses merit increased punishment, it is free to take appropriate steps toward that end. It must do so, however, without instituting measures which arbitrarily single out one group for harsher treatment, when there is no conceivable distinguishing feature which makes that group worthy of more punishment. I hold, therefore, that *N.J.S.A.* 2A:4A–43f(1) is an unconstitutional deprivation of the equal protection of the law.

## IV. SUMMARY

In conclusion, I hold the following:

1) the minimum penalties outlined in *N.J.S.A.* 2A:4A–43e(2) apply to any juvenile who has a previous adjudication of delinquency for unlawful taking of a motor vehicle or theft of a motor vehicle, regardless of whether or not that previous adjudication predates the passage of the act;

2) the question of credit for time served is a matter of substantive law as opposed to a question of practice and procedure; as such, the legislative mandate in *N.J.S.A.* 2A:4A–43f(1), if otherwise valid, would supersede the contrary New Jersey Court Rule *R.* 5:21–3(e);

3) the proscription against credit for time served instituted by *N.J.S.A.* 2A:4A–43f(1) bears no rational relationship to any legitimate governmental interest, and thus unconstitutionally deprives the disadvantaged class of the equal protection of the law that is guaranteed by the Fourteenth Amendment of the United States Constitution.

---

[5] Preventive pretrial detention has been upheld by the United States Supreme Court in *United States v. Salerno*, 481 *U.S.* 739, 107 *S.Ct.* 2095, 95 *L.Ed.* 697 (1987). The specific reasoning upon which the Court relied was that such detention is not punishment, but rather an administrative or regulatory measure.

J.M. will be sentenced to at least the mandatory minimum of 60 days in the New Jersey Training School for Boys at Jamesburg, pursuant to *N.J.S.A.* 2A:4A–43e(2). However, he will be given full credit for the 197 days he has been detained in the Hudson County Youth House pending disposition of the charge for which he is being sentenced today.