934 A.2d 1140

STATE IN THE INTEREST OF Y.S., A JUVENILE.

Superior Court of New Jersey
Chancery Division Family Part
Essex County

Decided May 3, 2007.

460

*Paula T. Dow,* Essex County Prosecutor, attorney for the State, (*Leslie Branch,* Assistant Essex County Prosecutor).

*Cynthia McCoy,* for the Juvenile.

CRONIN, J.S.C.

On October 3, 2006, four (4) individuals were arrested at 97 Chadwick Avenue, Newark, New Jersey, including a juvenile ("Y.S."). On October 4, 2006, a juvenile delinquency complaint was filed against Y.S. charging him with conduct which if committed by an adult, would constitute acts of: possession of a firearm without first having a permit (*N.J.S.A.* 2C:39–5f), possession of a weapon during the commission of a controlled dangerous substance (CDS) offense (*N.J.S.A.* 2C:39–4.1), possession of a defaced weapon (*N.J.S.A.* 2C:39–3d), possession of heroin (*N.J.S.A.* 2C:35–10a(1)), possession of heroin with the intent to distribute (*N.J.S.A.* 2C:35–5), possession of heroin with the intent to distribute within 1,000 feet of a school (*N.J.S.A.* 2C:35–7), and possession of heroin with the intent to distribute within 500 feet of public housing (*N.J.S.A.* 2C:35–7.1).

On November 2, 2006, the State filed a motion pursuant to *N.J.S.A.* 2A:4A–26 and *Rule* 5:22–2, seeking waiver of this case from the Superior Court, Chancery Division, Family Part, to the Superior Court, Law Division, Criminal Part. In this case, this

court must decide whether a juvenile may be waived up to adult court for alleged violation of the guns and drugs statute, *N.J.S.A.* 2C:39–4.1. The guns and drugs statute is listed among those offenses subject to waiver in a court rule, *Rule* 5:22–2(b)(3)(c), but not in the waiver statute, *N.J.S.A.* 2A:4A–26(a)(2)(a–j). Accordingly, this case involves a question of statutory interpretation which is of first impression in this jurisdiction.

In Section (a)(2), the waiver statute enumerates those offenses which are subject to waiver to the adult court. See, *N.J.S.A.* 2A:4A–26(a)(2)(a–j). A juvenile can be waived up to adult court only for those offenses listed in *N.J.S.A.* 2A:4A–26(a)(2)(a–j). The State properly concedes that the guns and drugs statute, *N.J.S.A.* 2C:39–4.1, is not expressly listed in *N.J.S.A.* 2A:4A–26(a)(2)(a–j). Since the guns and drugs statute is not expressly referenced in section (a)(2) of the waiver statute, the defense argues that the guns and drugs statute is not subject to waiver. Since the State bases its waiver application exclusively upon an alleged violation of the guns and drugs statute, the defense contends that the State's application should be denied as a matter of law.

Responding to this analysis of section 26(a)(2)(a–j) of the waiver statute, the State emphasizes that the gun and drug statute is expressly referenced in both section 26(e) of the waiver statute and in section 2(b)(3)(C) of the Court Rule pertaining to waiver, *Rule* 5:22–2(b)(3)(C). These references, and their impact upon the State's waiver application, will be addressed seriatim.

A. *The Waiver Statute.*

In its 2000 amendments, the legislature referenced the guns and drugs statute, *N.J.S.A.* 2C:39–4.1, in subsection (e) of the waiver statute, *N.J.S.A.* 2A:4A–26(e). Subsection (e) exempts certain offenses from being subject to the defense showing that the juvenile is subject to rehabilitation and therefore not subject to waiver. The State argues that the Legislature, by listing *N.J.S.A.* 2C:39–4.1 among those offenses exempted from this rehabilitation showing, "inversely" or "implicitly" expressed its intent that

*N.J.S.A.* 2C:39–4.1 is a waivable offense. Alternatively stated, the State argues that if the Legislature did not intend for the guns and drugs statute (*N.J.S.A.* 2C:39–4.1) to be a waivable offense, then there would be no need for the Legislature to include the guns and drugs statute among those offenses exempted (under *N.J.S.A.* 2A:4A–26(e)) from the rehabilitation defense to a waiver. The State's position is supported by the "rule of [statutory] construction that effect must be given, if possible [1], to every word, clause and sentence of a statute." Norman J. Singer, *Sutherland Statutory Construction,* § 46:06 (6th Ed. 2000), (*citing, State v. Thomas,* 322 *N.J.Super.* 512, 518–19, 731 *A.*2d 532 (App.Div.1999), *aff'd,* 166 *N.J.* 560, 767 *A.*2d 459 (2001)).

In order to give effect to the Legislature's inclusion of the guns and drugs statute in Section (e) of the waiver statute, the State essentially contends that the court should insert reference to the guns and drugs statute into Section (a)(2)(a-j) of the waiver statute. This State request to insert language into a statute raises significant separation of powers concerns. Rejecting a law enforcement officer's effort to insert language into a statute, the Appellate Division cautioned that, "[i]t is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers." *International Bhd. of Elec. Workers, Local 1470 v. Gillen,* 174 *N.J.Super.* 326, 329, 416 *A.*2d 446 (App.Div. 1980). This judicial reluctance to intrude upon the legislative function is particularly strong when penal statutes are involved. It is a well established rule of statutory construction that penal statutes should be strictly constructed against the government. *See Singer, supra,* § 59, *cited with approval in, State v. Rosado,* 131 *N.J.* 423, 430, 621 *A.*2d 12 (1993); *State v. Valentin,* 105 *N.J.*

---

[1] For the reasons set forth at pages 465–66, 934 A.2d at pages 1143–44, *infra,* under this court's analysis, it was not possible to give effect to the reference to the gun and drugs statute in section (e) of the waiver statute.

14, 17–18, 519 *A*.2d 322 (1987): *State v. Thomas, supra,* 322 *N.J.Super.* at 518, 731 *A*.2d 532.

The Defense contends, and the State properly concedes, that the waiver statute should be interpreted as a penal statute. This court's interpretation of the waiver statute as a penal statute is well supported by its function as the conduit from juvenile to adult criminal court. As our Supreme Court recognized:

> 'the waiver of jurisdiction [by the Family Part] is a 'critically important' action determining vitally important statutory rights of the juvenile.' In the opinion of one commentator, 'waiver to the adult court is the single most serious act that the juvenile court can perform.'....This is because once waiver of jurisdiction occurs, the child loses all the protective and rehabilitative possibilities available to the Family Part.

*State v. R.G.D.,* 108 *N.J.* 1, 4–5, 527 *A*.2d 834 (1987) (citations omitted). *Accord State v. J.M.,* 364 *N.J.Super.* 486, 491, 837 *A*.2d 392 (App.Div.2003), *aff'd,* 182 *N.J.* 402, 866 *A*.2d 178 (2005). Moreover, our Supreme Court in *R.G.D.* further observed that "in most cases the penal consequences of adult prosecution will be more severe than available under the Juvenile Code." 108 *N.J.* at 14, 527 *A*.2d 834. *Compare N.J.S.A.* 2C:43–1 to 22 (adult criminal sentencing) with *N.J.S.A.* 2A:4A–43 to 44 (juvenile dispositions). In view of these harsh sanctions available in the adult criminal court, there is a legislative policy favoring Family Court disposition. *See State in Interest J.M.,* 222 *N.J.Super.* 597, 601–02, 537 *A*.2d 771 (App.Div.1988), (interpreting *N.J.S.A.* 2A:4A–21b, 2A:4A:26, court finds "inherent authority" to "transfer back" case from Criminal Part to Family Part). *Accord State v. N.G.,* 305 *N.J.Super.* 132, 137–38, 701 *A*.2d 976 (Law Div.1997).

In the definitive treatise on statutory construction, the editor observed that "since penal statutes must be strictly constructed it is not appropriate for the court to supply missing words or sentences to clarify either ambiguous or missing language." *Singer, supra,* § 47.38, § 59.8. In the present case, reference to the guns and drugs statute is certainly "missing" from section (a)(2)(a-j) of the waiver statute. Judicial inclusion of the guns and drugs statute into section (a)(2)(a-j) would expand those offenses subject

to waiver beyond those which the Legislature expressly enumerated. Such expansion would necessarily increase the number of those juveniles subject to waiver to adult criminal court with its potentially more severe penal sanctions. Such a result conflicts with the legislative policy favoring Family Court disposition of juvenile offenses. *See State in Interest of J.M., supra,* 222 *N.J.Super.* at 601–02, 537 *A.*2d 771.

Significantly, since the guns and drugs statute is exempted from the rehabilitation defense through section (e) of the waiver statute, judicial inclusion of the guns and drugs statute into section (a)(2)(a-j) of the waiver statute would, upon a probable cause finding, effectively increase those offenses which would be removed from the family court's ability to hear rehabilitation evidence. Such a result would be contrary to Governor Whitman's intent in conditionally vetoing the waiver statute and in proposing to include the guns and drugs statute in an amendment to section (e) of the waiver statute. *See Governor's Veto Statement to Senate Bill No. 286,* (Jan. 10, 2000).

The bill which the Legislature passed and forwarded to the Governor amended, among other things, section (a)(2), expanding those offenses subject to waiver, and section (e), expanding those offenses exempted from the rehabilitation defense. *See* S. 286, 1998 Leg. (N.J. 1998). The guns and drugs statute was not referenced in this bill. Governor Whitman conditionally vetoed this bill. In her explanatory statement, the Governor expressed approval of the Legislature's expansion of section (a)(2) to include carjacking and certain enumerated firearm offenses (but not the guns and drugs statute). Explaining her veto, the Governor expressed concern about reducing the family court's authority to hear rehabilitation evidence. *See Governor's Veto Statement, supra,* at 2.

Therefore, the Governor sought to limit the offenses exempted from the rehabilitation defense. She did so by substituting the guns and drugs statute for the more frequently utilized statutes involving the distribution of any controlled dangerous substance

for pecuniary gain within 1,000 feet of a school or 500 feet of public housing. Thus, the Governor's inclusion of the guns and drugs statute in section (e) was intended to expand judicial authority to hear rehabilitation evidence. *See Governor's Veto Statement, supra,* at 2.

In the present case, the State seeks to ascribe a different intention to expand those offenses subject to waiver in section (a)(2). As previously noted, the Governor approved of section (a)(2) as passed by the Legislature without the guns and drugs statute, and did not propose any amendments to section (a)(2) in her veto message. The Legislature incorporated the Governor's proposed revisions in the waiver statute which was ultimately enacted. *Compare Governor's Veto Statement, supra,* at 3 (proposed revisions) *with N.J.S.A.* 2A:4A–26(e) (enacted statute). Thus, the legislative history to the 2000 amendments to the waiver statute does not support the State's contention that the Legislature intended to include the guns and drugs statute among those offenses subject to waiver in section (a)(2)(a-j) of the waiver statute. Accordingly, to the extent that the State's application is based on the waiver statute (*N.J.S.A.* 2A:4A–26), that application is denied.

### B. *The Court Rule*

The State contends that *Rule* 5:22–2 provides an independent basis to support its waiver application. Unlike the waiver statute, this Rule expressly references the guns and drugs statute as an offense subject to waiver. Compare *N.J.S.A.* 2A:4A–26 (a)(2)(a-j) (statute) with *Rule* 5:22–2(b)(3)(c) (rule). Clearly, the statute and rule conflict.

Relying upon *Winberry v. Salisbury,* 5 *N.J.* 240, 74 *A.2d* 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950), the defense contends that the Supreme Court exceeded its rulemaking authority in promulgating *Rule* 5:22. In *Winberry.* the New Jersey Supreme Court interpreted Art. VI, § 2, ¶ 3 of the New Jersey Constitution (1947) to mean that the rule-making power of

the Supreme Court is confined to practice, procedure, and administration. 5 *N.J.* at 245, 74 *A.*2d 406. The *Winberry* Court further held that when its rule-making authority is exercised in those areas, it is not subject to conflicting legislation. *Ibid.* However, the Court in *Winberry* ruled that in areas of substantive law (as opposed to procedural law), court rules must yield to legislation. The question therefore, is whether *Rule* 5:22(b)(3)(c) should be characterized as procedural or substantive.

An analysis of how the *Winberry* Court drew this substantive/procedural distinction is highly instructive in applying this distinction to *Rule* 5:22(b)(3)(c). *Winberry* involved a conflict between a court rule and a statute which set different time limits upon filing an appeal. 5 *N.J.* at 243, 74 *A.*2d 406. Resolution of this conflict turned upon an interpretation of the Judicial Article of the 1947 New Jersey Constitution, including its rule-making clause. *Id.* at 243, 74 *A.*2d 406, *interpreting, N.J. Const.* art. VI, § 2, ¶ 3. This rule-making clause provides that "the Supreme Court shall make rules governing the administration of all courts in the State and, *subject to law,* the practice and procedures in all such courts." *N.J. Const.* Art. VI, § 2, ¶ 3 (1947) (emphasis added). The *Winberry* Court ruled that the phrase "subject to law" does not mean "subject to legislation." 5 *N.J.* at 245, 74 *A.*2d 406. The Court observed that such an interpretation would be clearly "inconsistent with the intention of creating an integrated judicial system." *Id.* at 246, 74 *A.*2d 406.

The framers' intention to create "an integrated court system" was reflected in the record of proceeding before the Constitutional Convention and in the structure of Article VI, the *Winberry* Court observed. 5 *N.J.* at 244, 246, 74 *A.*2d 406. Reviewing that record, the *Winberry* Court concluded that, "there was a clear intent to establish a simple but fully integrated system of courts and to give to the judiciary the power and thus to impose on them the responsibility for seeing that the judicial system functioned effectively in the public interest." *Id.* at 244, 74 *A.*2d 406. This intent was expressed in Article VI which provides that, "[t]he judicial

power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction." *N.J. Const.* art. VI, § 2, ¶ 1. Article VI further provides that, "[t]he Superior Court shall have original jurisdiction throughout the State in all causes." *N.J. Const.* art. VI, § 3, ¶ 2. Judges of the Superior Court "shall exercise the powers of the court *subject to rules of the Supreme Court.*" *N.J. Const.* art. VI, § 3, ¶ 1 (emphasis added). As the Court observed, the judicial article further provides that, "[t]he Superior Court shall be divided into an Appellate Division, a Law Division, and a Chancery Division. Each division shall have such Parts, consist of such number of Judges, and hear such cases, *as may be provided by rules of the Supreme Court.*" *N.J. Const.* art. VI, § 3, ¶ 3 (emphasis added), *quoted in, Winberry, supra,* 5 *N.J.* at 246, 74 *A.*2d 406. The *Winberry* Court emphasized that Article VI, provided that, "[s]ub-ject to the rules of the Supreme Court,* the Law Division and the Chancery Division shall each exercise the powers and functions of the other Division when the ends of justice so require. . . ." 5 *N.J.* at 247, 74 *A.*2d 406 (emphasis added) (quoting, *N.J. Const.* art. VI, § 3, ¶ 4).

In view of these affirmative obligations imposed upon the Supreme Court for effective court administration, the *Winberry* Court concluded that, "[t]he only interpretation of 'subject to law' that will not defeat the objective of the people to establish an integrated judicial system and which will at the same time give rational significance to the phrase is to construe it as the equivalent of substantive law as distinguished from pleading and practice. The distinction [is] between substantive law, which defines our rights and duties, and the law of pleading and practice, through which such rights and duties are enforced in the courts. . . ." 5 *N.J.* at 247–48, 74 *A.*2d 406.

Thus, the framers of the 1947 Constitution viewed the Supreme Court's rule-making power as the mechanism through which their intent of creating an integrated judicial system could be realized. *See Winberry, supra,* 5 *N.J.* at 246–48, 74 *A.*2d 406. As previous-

ly noted, Article VI, § 3, ¶ 3 expressly empowers the Supreme Court to promulgate rules determining those cases to be heard in the Law and Chancery Division. Since *Rule* 5:22 functions as a bridge or conduit to transfer cases from the Chancery Division to the Law Division, it is clearly a procedural mechanism as contemplated by the framers of the 1947 New Jersey Constitution as interpreted by our Supreme Court in *Winberry*.

Seeking to characterize *Rule* 5:22(b)(3)(c) as "substantive" the defense argues that identification of which juveniles are subject to waiver is the "most substantive aspect of all." In support of this argument, defense correctly observes that *Rule* 5:22(b)(3)(c) adds an offense, thereby effectively increasing the number of juveniles potentially eligible for waiver. Moreover, waiver is a "critical event" in the proceeding which may have a significant impact upon the ultimate disposition of the case. *See* pages 465–66, 934 *A.*2d pages 1143–44, *supra*. Although accurate, these observations are not dispositive because "a rule of procedure may have an impact upon the substantive result and be no less a rule of procedure on that account." *Busik v. Levine*, 63 *N.J.* 351, 364, 307 *A.*2d 571 (1973), *appeal dismissed*, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973). *Accord New Jersey Dist. Court Ass'n. v. New Jersey Supreme Court*, 205 *N.J.Super.* 582, 585, 501 *A.*2d 596 (Law Div.1985), *aff'd*, 208 *N.J.Super.* 527, 506 *A.*2d 742 (App.Div.), *certif. denied*, 104 *N.J.* 386, 517 *A.*2d 393 (1986), *cert. denied*, 479 *U.S.* 1086, 107 *S.Ct.* 1289, 94 *L.Ed.*2d 146 (1987); *Paulison Ave. Assoc. v. Passaic City*, 18 *N.J.Tax* 101, 108 (1999) ("[m]ost procedural rules may have some collateral substantive effect but do not become substantive in nature because of such indirect effect.") *Busik* and its progeny instruct that this potential impact upon the substantive[2] result in the case does not

---

[2] Defense's "most substantive" characterization is inapt because it focuses upon the role of enumerated offenses in the operation of the waiver Rule, rather than the function of the waiver Rule itself. Analysis of the latter function determines whether the Rule addresses an area of procedural or substantive law.

determine whether a Rule is substantive or procedural under *Winberry* analysis.

Interpreting *Winberry*, the Supreme Court characterized *Rule 5:22* as "procedural" in *State v. J.M.*, 182 *N.J.* 402, 416, 866 *A.2d* 178 (2005). More specifically, the Court ruled that "[i]n the exercise of our authority to promulgate Court Rules affecting practice and procedure in our courts, we now modify *Rule 5:22–2* to permit a juvenile to testify and present evidence at the probable cause portion of the waiver hearing." *Id.* at 416 n.1, 866 *A.2d* 178. While the quoted language is dictum, it clearly expresses the Supreme Court's characterization of *Rule 5:22* as procedural.

▇▇▇▇ Seeking to characterize *Rule 5:22–2* as substantive, the defense relies upon courts who have drawn the substantive/procedural distinction by considering whether a rule "in and of itself" directly determines the outcome of a proceeding. *See Suchit v. Baxt*, 176 *N.J.Super.* 407, 427, 423 *A.2d* 670 (Law Div.1980). *Accord New Jersey Dist. Court Ass'n*, 205 *N.J.Super.* at 588, 501 *A.2d* 596; *State in Interest of J.M.*, 273 *N.J.Super.* 593, 599, 642 *A.2d* 1062 (Ch. Div.1994). If the rule does not directly determine the outcome of a proceeding, then it is characterized as procedural. *Id.* Similarly, these courts also consider whether the rule "is but one step in a series of steps in a ladder to final determination." *Id.* If the rule provides one of these steps, then it is characterized as procedural. *Id.* Applying this analysis, Rules establishing time limits to initiate appeal are procedural, *Winberry*, 5 *N.J.* at 245, 74 *A.2d* 406, but Rules denying credit for time served directly determine the length of sentence and are substantive, *State in Interest J.M.*, 273 *N.J.Super.* at 599, 642 *A.2d* 1062.

---

See *Winberry, supra*, 5 *N.J.* at 245, 74 *A.2d* 406 (time limits); *State v. Leonardis*, 73 *N.J.* 360, 367–68, 375 *A.2d* 607 (1977) (diversion of criminal defendants). *Accord State v. Molnar*, 81 *N.J.* 475, 488, 410 *A.2d* 37 (1980) (burden of proof), interpreting, *N.J.S.A.* 2C:1–1(c)(1). As previously noted (at 468–69, 934 *A.2d* at 1145, *supra*), the waiver Rule functions as the vehicle to transfer a case from one division to another within the Superior Court. Such transfers *within* the Judicial Branch function in a "procedural" manner as that term is used in *Winberry* and its progeny.

■ In the present case, *Rule* 5:22–2 pertains to the waiver or transfer of a case from the Chancery Division to the Law Division of the Superior Court. Contrary to defendant's contention, this rule does not "in and of itself" determine the outcome of the case. These outcomes are ultimately decided through subsequent proceedings (e.g., guilty plea, trial, dismissal motions) in the Chancery Division, in the event waiver is denied, or in the Law Division, in the event waiver is granted. *Rule* 5:22–2 provides a vehicle through which the case can be transferred from one division to the other for this ultimate determination in the recipient division. *See* pages 468–69, 934 *A.*2d page 1145, *supra.* Accordingly, *Rule* 5:22–2 can be properly characterized as "one step in a series of steps in a ladder to final determination", and therefore a procedural matter within the Supreme Court's constitutional rule-making authority.

For the reasons set forth above, *Rule* 5:22–2 is procedural and promulgated in conformity with the Supreme Court's constitutional rule-making authority. *See Winberry, supra,* 5 *N.J.* at 245, 74 *A.*2d 406. Accordingly, the State may proceed under *Rule* 5:22–2 in its present waiver application and this court shall schedule a Phase 1 hearing in accordance with that *Rule.*