255 N.J. Super. 530 (1992)
605 A.2d 765
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES FERGUSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1992.
Decided April 21, 1992.
*531 Before Judges KING, DREIER and GRUCCIO.
Barry T. Albin argued the cause for appellant[1] (Wilentz, Goldman & Spitzer, attorneys; Barry T. Albin and Jeffrey L. Menkin, on the brief).
Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for respondent (Alan A. Rockoff, Middlesex County Prosecutor, attorney; Simon Louis Rosenbach, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case defendant, James Ferguson, was convicted of knowing and purposeful murder and sentenced to a 30-year term with no parole eligibility. He was 14 years plus 8 months of age, in tenth grade, at the time of the homicide on October 7, 1988. His principal claim for reversal relates to his transfer hearing where the Family Court judge waived jurisdiction on February 14, 1989 and transferred the matter to the Law Division for prosecution as an adult. We conclude that the transfer hearing was fundamentally flawed and we remand for a new transfer hearing. We do not reach the claims of trial error but retain jurisdiction pending the outcome of the remand. If the case is again transferred to the adult court, we *532 will review the claims of trial error at that time. If the case is not transferred, we will relinquish jurisdiction to the Family Court to proceed as in the first instance.

I
This is the procedural background. On October 7, 1988 defendant, then 14, was charged in two Middlesex County juvenile complaints with delinquency under N.J.S.A. 2A:4A-20 to 2A:4A-91 for acts which if committed by an adult would constitute murder, N.J.S.A. 2C:11-3a(1) and (2); possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4d; and unlawful possession of a knife, N.J.S.A. 2C:39-5d.
On October 13 the Middlesex County Prosecutor's Office filed a motion in the Chancery Division, Family Part, for waiver of jurisdiction, permitting trial as an adult in the Law Division. N.J.S.A. 2A:4A-26. Judge Rebeck granted the motion and referred the case to the Law Division on February 14, 1989.
On March 1, 1989 the Middlesex County Grand Jury returned Indictment No. 585-3-89 charging defendant with murder, N.J.S.A. 2C:11-3a(1) and (2) (count one); possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4d (count two); and unlawful possession of a knife, N.J.S.A. 2C:39-5d (count three). Meanwhile, defendant had filed an unsuccessful motion in the Chancery Division, Family Part, seeking reconsideration of the February 14, 1989 transfer of jurisdiction to the Law Division. The basis for the rehearing request was "ineffective assistance of counsel." On March 15, 1989 we remanded an interlocutory appellate application by defendant stating: "the remand to the Family Court is for the sole purpose of having that court decide the pending motion made by the juvenile wherein he seeks reconsideration of the court's referral order entered on February 14, 1989." A hearing with testimony was held on the motion for a new transfer proceeding on June 26 and 27 before Judge Rebeck; he denied the motion for reconsideration on July *533 6, 1989. On October 3, we denied a motion for leave to appeal that order.
Defendant pled not guilty and was tried before Judge Hoffman and a jury in June 1990. The jury found defendant guilty on all charges. The judge denied both of defendant's post-trial motions on August 3, 1990. The judge then sentenced defendant to 30 years imprisonment without parole, as required by N.J.S.A. 2C:11-3b, on count one, murder. Counts two and three, possession of a knife for an unlawful purpose and unlawful possession of a knife, were merged. On these convictions, the judge imposed four years imprisonment, concurrent with the murder sentence. A VCCB penalty of $30 also was imposed.

II
The homicide charges arose from a fight between the defendant, age 14, and the victim, age 16, on October 7, 1988 after a school dance at Edison High School. Defendant was armed with a knife. The record suggests that the older and stronger victim who participated in the fight may have been the initial aggressor. There may well have been racial overtones to the sad incident. As obvious from the verdict, the jury rejected defendant's claims in defense, i.e., accidental homicide or self-defense, or in mitigation of the degree of the homicide through imperfect self-defense or passion-provocation.
Soon after defendant's arrest, his mother hired privately-retained counsel to represent him. Counsel, in turn, procured the services of Dr. Seymour Kuvin as a psychiatric expert for the purposes of the transfer hearing. Dr. Kuvin testified that in his opinion the juvenile was a good candidate for rehabilitation by age 19. Judge Rebeck rejected his testimony, ruled that the juvenile had not met the heavy burden of proof regarding the likelihood of rehabilitation by age 19, and transferred the case to the Law Division.
*534 Months later, at the sentencing hearing after the adult conviction, Judge Hoffman was presented with a comprehensive report prepared by the Office of the Public Defender containing many positive letters and evaluations on defendant. Based on this report, Judge Hoffman found as mitigating factors that (1) defendant's conduct was the result of circumstances unlikely to reoccur, N.J.S.A. 2C:44-1b(8); (2) defendant's character and attitude indicate that he is unlikely to commit another offense, N.J.S.A. 2C:44-1b(9); (3) defendant was particularly likely to respond affirmatively to probationary treatment, N.J.S.A. 2C:44-1b(1); (4) there were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, N.J.S.A. 2C:44-1b(4); (4) the victim's conduct induced or facilitated the commission of the offense, N.J.S.A. 2C:44-1b(5); and (6) defendant had no history of prior delinquency or criminal activity, N.J.S.A. 2C:44-1b(7). The only aggravating factor identified by the judge was general deterrence of others from violating the law, N.J.S.A. 2C:44-1a(9). Because of the mandatory sentencing statute, Judge Hoffman lacked any discretion to act favorably on this showing and sentenced defendant to the mandatory term of 30 years imprisonment without parole.

III
On this appeal defendant makes two contentions relevant to the transfer hearing in the Family Court:
POINT I  THE FAILURE OF EITHER DEFENSE COUNSEL OR THE COURT BELOW TO ADVISE DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO TESTIFY ON HIS OWN BEHALF AT THE WAIVER HEARING REQUIRES THAT THE WAIVER RULING BE VACATED AND A NEW HEARING HELD.
POINT II  DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE HEARING TO DETERMINE WHETHER HE WOULD BE TRIED IN JUVENILE OR ADULT COURT.
He makes these three contentions of trial error in the Law Division trial leading to his murder conviction:

*535 POINT III  THE STATEMENT GIVEN BY THE JUVENILE DEFENDANT TO POLICE WAS IMPROPERLY ADMITTED AT TRIAL.
POINT IV  THE TRIAL COURT FAILED TO INVESTIGATE POSSIBLE JUROR IMPROPRIETY DISCOVERED AFTER THE VERDICT WAS RETURNED.
POINT V  THE JURY INSTRUCTIONS DID NOT ADVISE THE JURORS THAT DEFENDANT'S AGE COULD BE CONSIDERED IN DETERMINING WHETHER THE LEGAL PRINCIPLES OF SELF-DEFENSE AND IMPERFECT SELF-DEFENSE APPLIED, WHICH ERROR REQUIRES REVERSAL OF DEFENDANT'S CONVICTION (Partially raised below).
We now consider the transfer hearing issues.

IV
The transfer or waiver hearing is a very critical stage in a homicide proceeding against a juvenile, perhaps the most critical stage in many cases. Once the waiver of jurisdiction occurs, the juvenile "loses all the protective and rehabilitative possibilities available to the Family Part." State v. R.G.D., 108 N.J. 1, 5, 527 A.2d 834 (1987). Here the defendant got 30 years without parole upon conviction of knowing and purposeful murder. If jurisdiction had not been waived, and his case tried in the Family Part, his exposure under the Code of Juvenile Justice, N.J.S.A. 2A:4A-44d(1), was a maximum of 20 years for knowing and purposeful murder, N.J.S.A. 2C:11-3a(1) or (2). Also, if sentenced as a juvenile, he was eligible for parole at any time during the term. "A juvenile inmate shall be released on parole when it shall appear that the juvenile, if released, will not cause injury to persons or substantial injury to a property." N.J.S.A. 30:4-123.53b. Parole prior to completion of one-third of the maximum sentence time is subject to the sentencing judge's approval. N.J.S.A. 2A:4A-44d(2).
A strong presumption of waiver of jurisdiction by the Family Court in criminal homicide cases arises under N.J.S.A. 2A:4A-26:
a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the family court to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:

*536 (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
(a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35-9, robbery which would constitute a crime of the first degree, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping or aggravated arson.
To defeat the waiver, the defendant has the burden of showing that the likelihood of rehabilitation substantially outweighs the reasons for transfer of jurisdiction:
However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. [N.J.S.A. 2A:4A-26a(3)].
Under this statutory scheme, the "`evidential axis' ... has been heavily tilted by the Legislature in favor of waiver." State v. R.G.D., supra, 108 N.J. at 12, 527 A.2d 834. Involuntary transfer to the adult court is not reviewable as of right because it is not a final judgment. The involuntarily transferred juvenile must seek interlocutory review of the waiver of jurisdiction or await the conclusion of the criminal action to mount the challenge. State in the Interest of R.L., 202 N.J. Super. 410, 495 A.2d 172 (App.Div.), certif. denied, 102 N.J. 357, 508 A.2d 226 (1985); S. Pressler, Current N.J. Court Rules, R. 2:2-3(b) Comment (1992). Despite this tilt in favor of waiver to the adult court, or more probably because of it, we conclude that the juvenile's procedural safeguards must be scrupulously honored at the waiver hearing stage.
In this case there were two principal deficiencies: first, counsel did not tell the defendant or his parent that he had a right to testify at the waiver hearing; second, in preparing for the waiver hearing, defense counsel simply seemed to put the case in the lap of the retained psychiatrist and stand aside. Indeed, the judge did not seem impressed by either sides' presentation at the waiver hearing. (The State presented a forensic psychologist.) Of course, the defendant had the substantial *537 burden of proof and his case thus failed. We are convinced that defendant had inadequate assistance of counsel at this critical stage and that the interests of justice require a new waiver hearing with the opportunity for a properly prepared defense presentation.

V
The defendant contends that since the waiver hearing is such a critical stage in the juvenile proceedings, all fundamental constitutional rights afforded an adult in criminal prosecution must also attach at a juvenile waiver hearing. Specifically, he contends that he had a constitutional right to testify on his own behalf at the hearing, and, certainly, at least had the right to be informed of this option. Defendant asserts that he was denied this opportunity and information by both his counsel and by the trial judge.
Our Legislature has accorded a juvenile all rights guaranteed to an adult charged with a crime. State in the Interest of H.M.T., 159 N.J. Super. 104, 110, 387 A.2d 368 (App.Div. 1978); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); N.J.S.A. 2A:4A-40 provides:
2A:4A-40. Rights of juveniles
All defenses available to an adult charged with a crime, offense or violation shall be available to a juvenile charged with committing an act of delinquency.
All rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State, except the right to indictment, the right to trial by jury and the right to bail, shall be applicable to cases arising under this act.
Both federal and New Jersey law recognize that the right to testify at one's own trial is a constitutional right. N.J. Const. of 1947, art. I, pars. 1, 10; N.J.S.A. 2A:81-8; Rock v. Arkansas, 483 U.S. 44, 51, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37, 46 (1987); Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562, 572 n. 15 (1975); State v. Savage, 120 N.J. 594, 626-628, 577 A.2d 455 (1990). The right is viewed as one of the essential ingredients of due process. *538 Rock v. Arkansas, supra, 483 U.S. at 51, 107 S.Ct. at 2709, 97 L.Ed.2d at 46; State v. Savage, supra, 120 N.J. at 627-628, 577 A.2d 455. The Legislature has implicitly recognized and expressly immunized the juvenile's right to testify at the transfer or referral hearing in N.J.S.A. 2A:4A-29, stating: "No testimony of a juvenile at a hearing pursuant to section 7 or 8 [transfer hearings] shall be admissible for any purpose in any hearing to determine delinquency or guilt of any offense." This statutory immunity takes much of the risk out of the decision to testify at the transfer hearing.
We can infer no voluntary waiver of the right to testify in this situation. The initially-retained private defense counsel testified at the hearing on the request for a new transfer proceeding on June 26, 1989. He admitted to not informing defendant, or his mother, of defendant's right to testify at the transfer hearing. His reasoning was:
I see the question of testifying as a lawyer's decision, as a strategy. People who are lay people are caught up in the emotions of the case.
Counsel made the decision himself and simply informed the defendant, "I'm not going to call you." He never gave defendant (or his mother) the option to testify or explained this right to them. This was a violation of R.P.C. 1.2(a):
(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify. [Emphasis added].
Since "all defenses available to an adult" and all rights under the federal and State constitutions (except indictment, trial by jury, and bail) are available to a juvenile, N.J.S.A. 2A:4A-40, we follow the guidance of Savage, supra, 120 N.J. at 628, 577 A.2d 455, and conclude that defendant had a right to testify at the transfer hearing if he and his parent so desired. See State in the Interest of A.H., 115 N.J. Super. 268, 272, 279 A.2d 133 (App.Div. 1971) (fundamental fairness to juvenile includes right *539 of allocution). He also had the correlative right to know this. Defense counsel, not the judge, has the responsibility to advise a juvenile of his constitutionally-protected right to testify. See State v. Savage, supra, 120 N.J. at 630, 577 A.2d 455; State v. Bogus, 223 N.J. Super. 409, 423, 538 A.2d 1278 (App.Div. 1988). The best practice is for the judge to inquire of counsel on the point. Again, we are guided by the expression of our Supreme Court in Savage:
Counsel's responsibility includes advising a defendant of the benefits inherent in exercising that right and the consequences inherent in waiving it. To ensure that counsel meets that obligation, it may be the better practice for a trial court to inquire of counsel whether he or she had advised a defendant, particularly a capital defendant, of his or her right to testify. This will best ensure that defendant's constitutional rights are fully protected. Indeed, counsel's failure to do so will give rise to a claim of ineffectiveness of counsel. [120 N.J. at 631, 577 A.2d 455].
Cf. N.J.S.A. 2A:4A-39b (statutory provisions for juvenile's waiver of counsel and presumably also the waiver of other rights).
We reject the State's claim of harmless constitutional error. We cannot say beyond a reasonable doubt that this failing did not contribute to the transfer decision, especially in view of our conclusions on the quality of defendant's representation discussed below. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Macon, 57 N.J. 325, 340, 273 A.2d 1 (1971). We realize that counsel's decision not to let defendant testify might have been sound, but defendant and his mother should have been told of this right nonetheless.

VI
We now turn to defendant's contention that he was denied effective assistance of counsel at the waiver or transfer hearing. Of course, defendant was constitutionally entitled to effective counsel under the now-familiar rubrics expressed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Fritz, 105 N.J. 42, 519 A.2d 336 *540 (1987). The federal Supreme Court first expressed the right of a juvenile to effective counsel at a transfer hearing this way:
These rights are meaningless  an illusion, a mockery  unless counsel is given an opportunity to function.
The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice. [Kent v. United States, 383 U.S. 541, 561, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97 (1966)].
Effective representation in a waiver hearing includes a reasonably professional presentation on the likelihood of rehabilitation. See State v. Bryant, 237 N.J. Super. 102, 106-107, 567 A.2d 212 (App.Div. 1988), (Muir, Jr., dissenting in part), rev'd in part on o.g. (as to sentence only), 117 N.J. 495, 569 A.2d 770 (1989).
Appellant stresses six ways in which counsel's representation was deficient respecting the transfer hearing:
1. It was gross neglect for counsel not to speak with, or call to testify, known witnesses who could tell the Court of James' amenability to rehabilitation.
2. It was gross neglect for counsel not to present evidence on the issue of deterrence and the rehabilitative services available to the juvenile court.
3. It was gross neglect for counsel to meet with James only twice prior to the waiver hearing, and to not prepare James for his examination by the defense psychiatrist and the State's expert.
4. It was gross neglect for counsel not to inform his client of his constitutional right to testify on his own behalf at the hearing.
5. It was gross neglect for counsel to hire a psychiatric expert without determining his qualifications, then surrender the entire burden of proving James' rehabilitativeness over to the psychiatrist.
6. It was gross neglect for counsel to withhold discovery materials regarding the offense from the psychiatrist or to fail to obtain for the psychiatrist known materials bearing upon James' prospects for rehabilitation.
After hearing testimony of defendant and his mother, defendant's original, privately-retained attorney and the Public Defender's expert, Norman R. Friedman, Esquire, the judge concluded that defense counsel's representation was adequate in the overall but that his "strategy backfired." We are satisfied from this record that there was more than a failure of strategy or tactics here. Unfortunately, because counsel was privately retained, the economic plight of the defense is quite apparent throughout the testimony on adequate representation. Defendant's *541 mother obviously had difficulty scraping together enough to pay counsel's modest retainer of $2,500 and Dr. Kuvin's fee of $1,250. Sadly, the tight money situation haunted and surely seems to have contributed to the minimal defense effort. Counsel originally wanted to hire another, very experienced and highly recommended, certified forensic psychiatrist, but he was too expensive. No defense investigator was hired. The psychiatrist, Dr. Kuvin, was the only defense witness at the hearing.
This was defense counsel's very first waiver hearing. Counsel spent very little time interviewing witnesses relevant to the issue of rehabilitation. He testified "that, I felt during the hearing that there was a very slim likelihood ... slim likelihood of the case being referred." He seems to have left everything to Dr. Kuvin. Counsel displayed little understanding of the function of a waiver hearing in a murder case. He withheld crucial data about defendant from Dr. Kuvin, or did not bother to get it for him. The judge was obviously frustrated by the poor presentation on rehabilitation. The judge said:
What I'm left with is trying to make a judgment if we put aside Dr. Kuvin's testimony, whether ... is there anything else that supports rehabilitation before he's nineteen? And certainly it seems to me that five years or ... well, he's ... he's already turned fifteen, four years is a ... a good period of time within which to work. However, all I know right now is ... is sort of what I know on paper because, as I said, I have problems with both .. . the testimony of [the defense and State experts]... I can only conclude that the defendant has failed to convince the Court by a preponderance of the evidence that he can be rehabilitated before he turns nineteen.... There's just so little there on the issue of rehabilitation. That was the defendant's burden. That was the burden that wasn't carried....
Indeed, Dr. Kuvin's lame effort, probably not really his fault, was no more than a "net opinion" on rehabilitation. As the defense expert, Mr. Friedman, pointed out, the extent of available correctional facilities and programs for juveniles convicted of murder should have been shown. A juvenile convicted of knowing and purposeful murder usually serves 80 to 120 months before parole, a substantial period, during which time he is exposed to rehabilitative services and constructive programs. *542 The defense also could have proved defendant's amenability to rehabilitation through his conduct in the detention facility and the testimony of his counsellors and social workers. Almost all of defendant's past, before the crime, was a blank page because counsel's effort in that direction was blocked by adverse hearsay rulings. As defendant's legal expert witness pointed out, the defense's and prosecution's medical or psychological witnesses usually cancel each other out in these waiver cases  "a wash"  so the defense must emphasize other, more practical and factual indicia of rehabilitation rather than just medical or psychiatric theory.
We note several examples, among many, from the record of what could have been done. After defendant was tried and convicted as an adult, a hearing was held before Judge Hoffman on June 29, 1990 to determine an appropriate incarceration facility. Thomas F. Lynch, Assistant Commissioner of the New Jersey Department of Corrections and Chief of the Division of Juvenile Services, was asked by the Public Defender's Office to evaluate defendant's case. These are his findings, submitted to the sentencing judge:
I visited the Middlesex Correction Facility and interviewed James Ferguson. I also had asked Greg Akles, who probably has the most experience in working on waiver cases with the courts, Don Christiano, the coordinator from Atlantic County, Rip Shivone, Superintendent at Southern Residential Group Center, as well as Terry Tuskey who is the coordinator for Middlesex County, to interview James. We were unanimous in our opinion that this youngster represents one of the most appropriate candidates for being treated as a juvenile of any that we have seen. I cannot recall another juvenile offender who had the potential for being rehabilitated that James does in my over 20 years with the Department of Corrections.
Another example is the lack of explanation for the knife. Judge Rebeck was without any explanation from the defense regarding one of the most critical aspects of the case, why defendant had carried a knife that evening. Valentine's failure to present any information tending to explain the presence of the knife clearly influenced Judge Rebeck's waiver decision because he said:

*543 [Defendant] has no prior record, so obviously he has no record for violence, but I also know that he carries a knife and carried it for a year according to what he told Doctor Musikoff. He used it in a fight, killed somebody and walked away. That's all I have.
Dr. Margaret Beyer, a psychologist specializing in juvenile offenders, conducted an evaluation of defendant which was submitted to Judge Hoffman after conviction. Dr. Beyer's report contains an indication of the type of information the defense could have given Judge Rebeck had defendant been permitted to testify at the waiver hearing or if other evidence had been presented on the point:
In recalling his fight with Steven Fulcher on October 7, 1988, James talked about the racial pressures in Edison: "I wasn't used to hearing racist comments at all. Newark Boys Chorus School was mostly black. Science High School was mixed, but there were a lot of black students. Edison High School was my first experience being in the minority. `Niggers die' was written on the curb at school. A group of racist skinheads in the school called me and my black friends `niggers." It was a shock to hear racial remarks."
When asked how he handled this racism, James commented, "I figured my personality was what counted. Most people accepted me. I had learned to depend on myself. I had good self-control. I understood my feelings. If a person wronged me, I forgave them real quick. Just because someone says something to you, don't stoop to their level. As a child I believed that if someone fights with you, you have to fight back. But with maturity, I stopped that fighting fire with fire philosophy. As long as they didn't touch me I could handle it. Of course, everyone has a breaking point. It takes two people to argue. But I wouldn't express my anger unless someone gave me a physical confrontation."
James described his biggest fear in Edison as walking home at night. "I was always worried about night time. People had been driving by me yelling racist things." He talked about his fears with his best friend who offered him a sheathed knife to carry with him. James said he accepted the knife so he would not be afraid. "My grandmother didn't know I was carrying the knife. She wouldn't have let me leave home with it. She would have been understanding about why I felt scared, but she would still have been disappointed because I hid it from her." James' grandmother reported that it was "a scary three mile walk to his friend's house" (she said that James was only allowed out at night on the weekends).
Without some presentation of this kind of background, whether this information is actually accurate and reliable or not, any chance to grasp and evaluate the defendant's claim that he should not be waived to adult court was probably almost impossible for the judge.
*544 We conclude that the quality of defendant's representation at the waiver hearing fails under the controlling federal and State tests. We think that "counsel's conduct so undermined the proper function of the adversarial process" that the hearing "cannot be relied on as having produced a just result" and that "counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's [waiver to adult court]." State v. Fritz, supra, 105 N.J. at 58, 519 A.2d 336, citing and quoting in part Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692-693 (1984).
We remand for a new hearing on whether defendant's case should be waived to the Law Division for trial as an adult. R. 5:22-2. All information relevant to the defendant's chances of rehabilitation up to the date of the hearing are relevant to the decision. "The question the waiver court must resolve is whether the juvenile is likely, before he attains the age of 19, to be led away from a path of crime by the processes of social rehabilitation available to the court." State in the Interest of A.B., 109 N.J. 195, 200, 536 A.2d 240 (1988).
We retain jurisdiction pending the outcome of the new waiver hearing. If the judge declines to waive the jurisdiction of the Family Court, we will relinquish all jurisdiction and the matter will proceed in the Family Court on the juvenile delinquency complaints. If the judge decides to waive jurisdiction of the Family Court, we will then entertain the appeal and review the claims of error raised at the trial resulting in defendant's conviction for murder, and any claims of error raised relevant to the new transfer hearing ordered by this remand.
Reversed in part; jurisdiction retained.
NOTES
[1] Appellant's present counsel did not appear in any proceedings at the trial level. Their service here on appeal, rendered pro bono, is appreciated by this court.