701 A.2d 976

STATE OF NEW JERSEY, PLAINTIFF, v. N.G., DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Essex County

Decided July 11, 1997.

*Jeffrey R. Cartwright*, Assistant Essex County Prosecutor, for plaintiff (*Clifford J. Minor*, Essex County Prosecutor, attorney).

*A.J. Fusco, Jr.*, for defendant (*A.J. Fusco, Jr., P.A.*, attorney).

VICHNESS, J.S.C.

Based upon stipulated facts, the defendant N.G. was born on August 7, 1980. From time to time, N.G. would assist his grandfather at his store in Hillside, New Jersey. On September 7, 1995, defendant found and removed a handgun which was lawfully at the grandfather's place of business. As of September 10, 1995, N.G. had never been adjudicated a delinquent. However, on that day, N.G. and his friend, Hamin Farrell were the only individuals present when Mr. Farrell died as a result of a gunshot from the gun which had been taken from the grandfather's place of business.

On September 12, 1995, N.G. gave a statement to the Newark Police Department. A complaint for juvenile delinquency was then filed against him and he was remanded to the youth house.

Subsequent to his arrest, N.G.'s mother retained the services of an attorney to represent her son. A hearing was held before the Honorable Harold Fullilove in the Family Part on September 27, 1995. At that proceeding, pursuant to attached Exhibit C–1, the case was voluntarily waived to the Law Division. No record is available of the hearing before Judge Fullilove. On November 27, 1995, defendant was charged by complaint with homicide and weapons charges. Defendant was given an opportunity to testify before the Grand Jury, but his attorney elected not to have him testify. An indictment was returned against N.G. on November 29, 1995 charging him with reckless manslaughter *N.J.S.A.* 2C:11–4b(1), unlawful possession of weapon *N.J.S.A.* 2C:39–5b, and possession of a weapon for an unlawful purpose *N.J.S.A.* 2C:39–4a. On October 15, 1996, defendant made a motion to return the case to the Family Part.

A hearing took place on May 30, 1996 in which the only witness to testify was defendant's mother. She testified that her attorney advised her to leave the case in the Family Part, however, she believed that the only way to get her son bailed out was to voluntarily waive the case to the Law Division, where her son would be tried as an adult. N.G.'s mother also indicated that the first time she remembers being told that if her son was convicted as an adult, he would face a mandatory period of three years in jail, pursuant to the provisions of the *Graves Act N.J.S.A.* 2C:43–6c, was after he had been bailed out of jail. When she became aware of the mandatory nature of the *Graves* penalty, she told her attorney that perhaps she should not have asked that her son be treated as an adult. Her attorney's response was that she had already made the decision. It appears that had N.G.'s mother known about the *Graves Act,* she may not have voluntarily waived her son's matter to the Law Division. There is no record regarding any discussion with N.G. prior to the voluntary waiver.

Both defendant and the State concede that the questions of whether and under what circumstances a Law Division Judge can return a case which has been voluntarily waived from the Family

Part are questions of first impression in the State of New Jersey. The State contends that, "... a Law Division Judge has [no] authority to remand a matter to the Family Part for reconsideration of a voluntary waiver order." Defendant contends that this case "... should not be left in the adult courts, but should be viewed that the best interests of justice require that it be returned to the Juvenile Court." Although, there are no reported cases directly on point, an examination of analogous situations suggests a logical answer to these questions.

Because of the difference in the way the Law Division and the Family Part treat a juvenile, "the waiver of jurisdiction [by the Family Part] is a critically important action determining vitally important statutory rights of the juvenile". *State in the Interest of R.L.*, 202 *N.J.Super.* 410, 412, 495 *A.2d* 172 (App.Div.1985) *certif. den.* 102 *N.J.* 357, 508 *A.2d* 226 (1985). *See State v. Ferguson*, 255 *N.J.Super.* 530, 605 *A.2d* 765 (App.Div.1992). It has been suggested that "... waiver to the adult court is the single most serious act that the Juvenile Court can perform." P. Hamn, *The Juvenile Offender and the Law*, 180 (3d ed. 1984). This type of act is very significant "because once [a] waiver of jurisdiction occurs, the child loses all the protective and rehabilitative possibilities available to the Family Part." *State v. R.G.D.*, 108 *N.J.* 1, 5, 527 *A.2d* 834 (1987). The Supreme Court of the United States has found the waiver process to require "procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness ..." *Kent v. United States*, 383 *U.S.* 541, 553, 86 *S.Ct.* 1045, 1053, 16 *L.Ed.2d* 84 (1966). This is particularly true where, as here, the waiver will cause the juvenile to be subjected to a mandatory period of incarceration, thus, forcing his removal from high school. *See N.J.S.A.* 2C:43–6c.

In deciding whether or not the waiver process satisfied the basic requirements of due process and fairness, a court would ordinarily review a transcript of the waiver hearing. As noted in *State v. R.G.D.*, "The best measure of a waiver decision will be found in

the Court's statement of reasons. More is needed than the judge's individual call; specific factors must be delineated on the record." *R.G.D.*, supra, 108 *N.J.* at 15, 527 *A.*2d 834. However, in this case, as stipulated by the State and the defendant, there is no available record of the waiver hearing before Judge Fullilove. Thus, no statement of reasons, and no recitation of the factors which the judge considered are available for review. The lack of record below makes it impossible to determine whether or not the constitutionally protected requirements of due process and fairness have been met, even though "... the juvenile's procedural safeguards must be scrupulously honored at the waiver stage." *State v. Ferguson*, supra, 255 *N.J.Super.* at 536, 605 *A.*2d 765. The lack of record also makes it impossible to know if the waiver was made knowingly, and willingly.

While there are no reported cases which deal with advising a juvenile of the *Graves Act* consequences of a voluntary waiver, there are cases which deal with comparable situations. The appellate division has considered the consequences of failing to advise a juvenile of his right to testify in the context of an involuntary waiver hearing pursuant to *N.J.S.A.* 2A:4A–26a(2)(a). The court held in *State v. Ferguson*, that the defense attorney as opposed to the judge, "has the responsibility to advise a juvenile of his constitutionally-protected right to testify." *Ferguson*, supra, 255 *N.J.Super.* at 539, 605 *A.*2d 765. In citing *State v. Savage*, 120 *N.J.* 594, 577 *A.*2d 455 (1990), the court also indicated that "counsel's responsibility includes advising a defendant of the benefits inherent in exercising that right and the consequences inherent in waiving it.... Indeed, counsel's failure to do so will give rise to a claim of ineffectiveness of counsel." The same reasoning is applicable to this case. The testimony of the juvenile's mother is that she was not advised of the consequences of the voluntary waiver. There is no testimony directly from N.G. concerning his knowledge. Without an understanding of the *Graves Act* consequences, it is impossible to conclude whether or not the juvenile and/or his mother made the waiver "knowingly, willingly, voluntarily and after consultation with counsel" as required by *R.* 5:22–

1. The lack of a record before the Juvenile Court compounds the problem.

The failure of defendant's attorney to advise him and/or his mother of both the benefits of a voluntary waiver and the consequences of such a waiver in this case constitutes a prima facie showing of the ineffective assistance of counsel. The attorney's conduct "so undermined the proper function of the adversarial process that the hearing cannot be relied on as having produced a just result and that counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's waiver to adult court." *State v. Ferguson, supra,* 255 *N.J.Super.* at 544, 605 *A.*2d 765, citing *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). The issue of ineffective assistance of counsel in this case calls into question whether or not the waiver was made knowingly, willingly and voluntarily. Since neither N.G. nor his mother knew the consequences of the waiver when it was made, the hearing cannot be said to have produced a just result.

The above reasoning is particularly applicable to this case where "the sanction would be harsh if he is convicted as an adult of the two weapons offenses ... mandatory imprisonment of three years or one-third of his custodial sentence, whichever is greater pursuant to the *Graves Act N.J.S.A.* 2C:43–6c." *State in the Interest of J.M.,* 222 *N.J.Super.* 597, 601, 537 *A.*2d 771 (App.Div. 1988). The sanction here may be even harsher because of the charge of reckless manslaughter. Because of the potential disparity of punishment between defendant's treatment as an adult and his treatment as a juvenile, it is apparent that the ineffectiveness of counsel has prejudiced defendant. A dismissal without prejudice of the indictment and a transfer to the Family Part will not prejudice the State. The State will still be able to apply for an involuntary waiver if it thinks that one is appropriate. On the other hand, a failure to return this case to the Family Part would violate the legislative intent of the Code of Juvenile Justice, in particular *N.J.S.A.* 2A:4A–21b which states:

This act shall be construed so as to effectuate the following purposes:

b. Consistent with the protection of the public interest, to remove from children committing delinquent acts certain statutory consequences of criminal behavior, and to substitute therefore an adequate program of supervision, care and rehabilitation.

*N.J.S.A.* 2A:4A–21b authorizes transfers from the Law Division to the Family Part when it is ascertained that a person charged with a crime in the Law Division was a juvenile at the time of its commission. There is no reason not to apply the statute to the circumstances that exist in this case. The following factors present in this case mitigate in favor of returning the case to the Family Part:

1. The voluntary waiver of defendant was made without defendant or his parent being aware of the harsh consequences of the *Graves Act,* if he was tried as an adult.

2. A prima facie showing of the ineffectiveness of defendant's counsel has been made.

3. Because of the applicability of the *Graves Act,* defendant will be prejudiced if the case remains in the Law Division.

4. The State will not be prejudiced if the matter is returned to the Family Part.

5. The legislative intent of the Code of Juvenile Justice will be effectuated by a transfer back to the Family Part.

6. No showing was made that the waiver hearing satisfied the basic requirements of due process and fairness.

7. The waiver has not been shown to have been made knowingly, willingly and voluntarily.

8. A conviction or guilty plea as an adult will require the juvenile, who had never been in trouble before, to be removed from high school and be sent to jail.

9. No record of the waiver hearing is available for review.

Because of the above factors and the previously discussed applicable law, Indictment 95–11–3655 is dismissed without prejudice, and the case is to be returned to the Family Part. This decision does not diminish the seriousness of what occurred. By returning the case to the Family Part, the court will have the wide range of resources available to the juvenile court at its disposal. Although what has occurred clearly is a tragedy for Hamin Farrell's family, it is hoped that a return to the Family Part will prevent it from also being a tragedy for N.G. and his family. Now

that the defense bar is on notice of its responsibilities in a voluntary waiver situation, a knowing failure to meet those responsibilities should not be perceived by future defense counsel as allowing juveniles to change their minds and have cases returned to the Family Part.