837 A.2d 392

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. J.M., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 6, 2003—Decided December 8, 2003.

Before Judges KESTIN, AXELRAD, and WINKELSTEIN.

*Anthony M. Arbore* argued the cause for appellant (*Forster & Arbore,* attorneys; *Mr. Arbore,* on the brief).

*LeeAnn Cunningham,* Assistant Prosecutor, argued the cause for respondent (*John G. Laky,* Prosecutor, attorney; *Mr. Laky and Ms. Cunningham,* of counsel and on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

Defendant J.M., a juvenile, and his two adult co-defendants held-up a gas station in Hackettstown on November 28, 2001. The State moved before the Family Part to prosecute defendant as an adult pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2. Defendant was seventeen years and seven months old on the date of the offense, and he was accused of engaging in conduct which, if committed by an adult, would constitute first-degree robbery, a violation of *N.J.S.A.* 2C:15–1; second-degree conspiracy to commit robbery, a violation of *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1; and second-degree aggravated assault, a violation of *N.J.S.A.* 2C:12–1b(1). After the Family Part granted the State's motion, defendant waived his right to indictment and trial by jury, and entered a guilty plea to second-degree robbery and second-degree conspiracy to commit robbery. The court imposed a six-year sentence with an eighty-five percent parole disqualifier pursuant to the No Early Release Act, *N.J.S.A.* 2C:43–7.2, plus fines and restitution.

On appeal, defendant's primary challenge is to the decision of the Family Part judge to waive jurisdiction to the Law Division. Defendant also challenges the length of his sentence and the imposition of restitution. We reverse on the waiver issue for two reasons: (1) defendant was denied the right to testify during the probable cause portion of his waiver hearing; and (2) the prosecutor failed to provide a statement of reasons for the waiver application. *See State in the Interest of R.C.,* 351 *N.J.Super.* 248, 249–50, 798 *A.*2d 111 (App.Div.2002). Consequently, we do not reach the sentencing issues.

These are the facts. According to a statement defendant gave to the Hackettstown police on December 17, 2001, he and his co-defendants, John Stagg and Mike Torrisi, first discussed robbing the service station two to three hours before the robbery occurred. Defendant said the plan was to "wait for the [gas station attendant] to come around, I was gonna turn the lights off and John was gonna take care of him and I was gonna grab the money." Torrisi drove defendant and Stagg to the service station; Torrisi re-

mained in the car. After waiting ten minutes for all the cars to leave, defendant turned off the lights in the service station and Stagg "took the [attendant] down." Stagg struck the attendant on the head with an aluminum baseball bat that he found in the back of the attendant's booth. The attendant was seriously injured. Neither Stagg nor defendant knew the bat was there before they arrived at the gas station.

After seeing the attendant fall to the ground bleeding, defendant "ran inside the booth and the register was [open] and I grabbed the money that was in there." Torrisi then drove defendant and Stagg to Torrisi's house where they divided the money.

At the waiver hearing, Officer Wade Caccese, the State's witness, testified that he arrived at the crime scene after defendant and his co-defendants left. He described seeing blood and vomit in the attendant's booth, and a baseball bat on the carport floor. On cross-examination, he acknowledged that based on the information he had gathered, neither defendant nor Stagg brought a weapon to the gas station, and the bat was located in the attendant's booth when they arrived. Caccese agreed that the plan made by the three co-defendants was to punch the attendant, not to strike him with a weapon.

In rendering its decision to waive jurisdiction over defendant, the court stated:

> the plan was to go to the station and Stagg would do something to the attendant. I understand there wasn't a plan formulated at that time to hit him over the head with a bat. And the juvenile was going to participate. He was going to darken the lights ... after Stagg had distracted the attendant [and] he was going to take the money and that's, in fact, what happened. Although, when they got there, Stagg saw that there was a bat and used the bat to disable the attendant.

During the waiver hearing, defense counsel requested that defendant be permitted to testify. Counsel argued that the testimony would have a bearing on whether the State could establish probable cause for first-degree robbery, which is a Chart 1 offense, or second-degree robbery, which is not. This distinction is significant because upon a finding of probable cause for second-degree robbery, a defendant may rebut the presumption of waiver

by demonstrating the probability of his rehabilitation before he reaches the age of nineteen. *N.J.S.A.* 2A:4A–26e; *R.* 5:22–2(b)(1). That option is not available if the judge finds probable cause to believe defendant was party to a Chart 1 offense. *N.J.S.A.* 2A:4A–26e; *R.* 5:22–2(b)(3). The judge denied defendant's request to testify, reasoning that regardless of whether defendant knew that Stagg was going to strike the attendant with the bat, the court still had a "well-grounded suspicion or belief" that defendant was engaged in a first-degree robbery.

The court's oral decision was memorialized in a January 29, 2002 order. Although the court made no findings as to the second-degree aggravated assault charge, the order stated that the judge found probable cause to believe that defendant had committed first-degree robbery and second-degree aggravated assault.

The Code of Juvenile Justice (Code) provides that a juvenile over the age of fourteen at the time of the charged delinquent act may be waived without his or her consent to be tried as an adult upon a demonstration of probable cause to believe that the juvenile committed delinquent acts which, if committed by an adult, would constitute various crimes. *N.J.S.A.* 2A:4A–26a(1) & (2)(a). Probable cause is "no more than a well-grounded suspicion or belief that an offense has taken place and that [a defendant] was a party to it." *State in the Interest of A.T.*, 245 *N.J.Super.* 224, 227, 584 *A.*2d 861 (App.Div.1991). Prior to the amendment of the Code in 2000, once probable cause was demonstrated, a juvenile so charged was entitled to rebut the presumption of waiver by showing that the probability of the juvenile's rehabilitation by the age of nineteen would substantially outweigh the reasons for waiver. *Ibid.* (formerly *N.J.S.A.* 2A:4A–26a(3)); *see also R.C.*, *supra,* 351 *N.J.Super.* at 249–50, 798 *A.*2d 111. Subsequent to the 2000 amendments, those juveniles who were sixteen years of age or older at the time of the charged offense, and were accused of Chart 1 offenses, are waived solely upon a showing of probable cause. *N.J.S.A.* 2A:4A–26e. The juvenile so charged no longer

has the right to demonstrate a probability that his or her rehabilitation by age nineteen would outweigh the reasons for waiver. *R.* 5:22–2(b)(3). "On a finding of probable cause for any of these enumerated [Chart I] offenses, no additional showing is required for waiver to occur. Jurisdiction of the case shall be transferred immediately." *Ibid.*

In enacting the 2000 amendments, the Legislature intended to confer "primary responsibility upon the county prosecutors for waiver decisions involving juveniles over the age of sixteen charged with Chart 1 offenses while at the same time providing an adequate safeguard against the arbitrary exercise of this discretionary authority." *R.C., supra,* 351 *N.J.Super.* at 260, 798 *A.*2d 111. The prosecutor's decision to waive the juvenile under these conditions is subject to judicial review only for a "patent and gross" abuse of discretion. *Ibid.* Yet, while a juvenile over the age of sixteen and accused of committing a Chart 1 offense may now more easily be waived to be tried as an adult, the need for procedural safeguards to be available to the juvenile at the waiver hearing continues to be meaningful. In fact, because the accused juvenile is now in greater jeopardy of losing the "protective and rehabilitative possibilities available to the Family Part," *State v. R.G.D.,* 108 *N.J.* 1, 5, 527 *A.*2d 834 (1987), safeguarding the juvenile's procedural rights at the waiver hearing becomes even more important.

A juvenile waiver hearing is a " 'critically important' action determining vitally important statutory rights of the juvenile." *State in the Interest of R.L.,* 202 *N.J.Super.* 410, 412, 495 *A.*2d 172 (App.Div.) (quoting *Kent v. United States,* 383 *U.S.* 541, 556, 86 *S.Ct.* 1045, 1054–55, 16 *L. Ed.*2d 84, 94 (1966)), *certif. denied,* 102 *N.J.* 357, 508 A.2d 226 (1985); *see also State v. Ferguson,* 255 *N.J.Super.* 530, 535, 537, 605 *A.*2d 765 (App.Div.1992) (waiver proceedings in homicide case against juvenile is "perhaps the most critical stage in many cases."), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994). Because of its critical importance, a juvenile has the right to testify at the hearing. *Id.* at 537–38, 605 *A.*2d 765.

Though case law has focused on a juvenile's right to testify at the waiver hearing in the context of whether he may be rehabilitated by age nineteen, our research has revealed neither statute, nor court rule nor legal precedent which would abrogate a juvenile's right to testify in the probable cause portion of the waiver hearing.

■ We are mindful that "punishment has now joined rehabilitation as a component of the State's core mission with respect to juvenile offenders." *State v. Presha,* 163 *N.J.* 304, 314, 748 *A.2d* 1108 (2000). Still, while amending the Code, the Legislature did not jettison the juveniles' due process rights in the amendments' wake. Subject to certain exceptions, a juvenile continues to have all rights guaranteed to an adult charged with a crime. But for the right to indictment, to trial by jury and to bail, "[a]ll defenses available to an adult charged with a crime, offense or violation shall be available to a juvenile charged with committing an act of delinquency." *N.J.S.A.* 2A:4A–40. Encompassed within these rights is the right to testify at trial. "Both federal and New Jersey law recognize that the accused in a criminal trial has the constitutional right to testify on his or her own behalf." *State v. Torres,* 313 *N.J.Super.* 129, 145, 713 *A.2d* 1 (App.Div.) (citations omitted), *certif. denied,* 156 *N.J.* 425, 719 *A.2d* 1023 (1998). Moreover, when the Legislature amended the Code in 2000, it left unchanged that provision which prohibits the use of a juvenile's testimony at a waiver hearing in any subsequent proceeding, *see* *N.J.S.A.* 2A:4A–29, the clear implication being that a juvenile's right to testify at the waiver hearing was unaffected by the amendments.

■ Due process entitles a party to a reasonable opportunity to be heard. *Hyman v. Muller,* 1 *N.J.* 124, 129, 62 *A.2d* 221 (1948). Unless a party has an opportunity "to test, explain or refute" the evidence, "there is no hearing." *Ibid.; see also Kent, supra,* 383 *U.S.* at 560, 86 *S.Ct.* at 1057, 16 *L. Ed.*2d at 97 (juvenile's counsel entitled to be "given an opportunity to function" at waiver hearing; otherwise, juvenile's "rights are meaningless—an illusion, a mockery."); *State in the Interest of B.T.,* 145 *N.J.Super.* 268, 273, 367

A.2d 887 (App.Div.1976) (due process at waiver hearing included "opportunity to be heard and present evidence."), *certif. denied*, 73 *N.J.* 49, 372 A.2d 314 (1977).

■ Against this framework, we conclude that the failure to provide defendant with an opportunity to be heard requires a new waiver hearing. Defendant was charged with first-degree robbery as an accomplice. Robbery is a crime of the second-degree unless "if in the course of committing the theft the actor attempts to kill anyone or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon[,]" in which case it becomes a first-degree offense. *N.J.S.A.* 2C:15–1b. Thus, to establish probable cause that defendant was a party to first-degree robbery, the State was required to demonstrate not only that probable cause existed to show that defendant intended to engage in the robbery, but also that probable cause existed to show that defendant shared the same purpose as did the principal as to the crime's basic elements—those that rendered the offense a first-degree robbery as opposed to a second-degree robbery. See *State v. Fair*, 45 *N.J.* 77, 95, 211 A.2d 359 (1965), where the Supreme Court noted:

> If both parties enter into the commission of a crime with the same intent and purpose each is guilty to the same degree; but each may participate in the criminal act with a different intent. Each defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind.
>
> [*Ibid.*]

*Cf. State v. Savage*, 172 *N.J.* 374, 388–89, 799 A.2d 477 (2002) (when prosecution based on theory that defendant acted as accomplice, trial court required to instruct jury that accomplice may have different mental state than principal); *State v. Weeks*, 107 *N.J.* 396, 410, 526 A.2d 1077 (1987) (finding that jury must be instructed that to find defendant guilty of crime under accomplice liability, defendant must have shared intent of crime's basic element).

Stated somewhat differently, to find probable cause that defendant committed a first-degree robbery as an accomplice, the State

needed to demonstrate that defendant had the purpose to promote or facilitate the robbery with the use of the baseball bat, or to otherwise inflict or attempt to inflict serious bodily injury on the gas station attendant. Defendant's testimony may have had a direct bearing on that issue. And, if based on defendant's testimony, the judge did not have a well-grounded suspicion or belief that defendant shared his co-defendant's purpose with regard to the weapon, the court may have only found probable cause for second-degree robbery. Had that been the case, defendant would then have been entitled to present evidence of rehabilitation because second-degree robbery is not a Chart 1 offense.[1]

To support its decision to deny defendant the right to testify, the waiver hearing court relied on *State v. Baker*, 303 *N.J.Super.* 411, 697 *A.*2d 145 (App.Div.), *certif. denied,* 151 *N.J.* 470, 700 *A.*2d 882 (1997). In *Baker*, the defendant was convicted of having participated in the robbery of a drug dealer. *Id.* at 413, 697 *A.*2d 145. The defendant was the driver of the vehicle, driving his co-defendants both to and from the robbery scene. *Ibid.* Unbeknownst to the defendant, who testified at trial, in the course of the robbery, one of the co-defendants shot the victim. *Ibid.* In *Baker*, we concluded that the judge correctly charged the jury that the defendant could be an accomplice to the robbery because, as an ongoing offense, the robbery continued through the defendants' flight after the theft, while Baker drove the getaway car. *Id.* at 413, 419, 697 *A.*2d 145. That conclusion was reached after the defendant had testified, unlike in this case where defendant was denied that opportunity. Our decision in *Baker* may or may not ultimately provide the waiver court with sufficiently analogous precedent to conclude that defendant's participation in the crime evidenced a shared purpose with his co-defendants to find probable cause that he engaged in a first-degree robbery. Neverthe-

---

[1] As we noted earlier, in rendering its decision, the waiver court made no reference to the second-degree aggravated assault charge as a reason for waiving defendant to be tried as an adult, even though that charge is mentioned in the court's transfer order.

less, whatever conclusion the court ultimately reaches must first abide providing defendant with an opportunity to testify.

We are also aware that a probable cause hearing in the context of a waiver proceeding has been analogized to a probable cause hearing for an accused adult prior to indictment or the determination of a grand jury to indict. *See A.T., supra,* 245 *N.J.Super.* at 228, 584 *A.*2d 861; *B.T., supra,* 145 *N.J.Super.* at 273, 367 *A.*2d 887. Yet, neither *A.T.* nor *B.T.,* nor any other decision that we have located, precludes a juvenile's right to testify during the probable cause component of a waiver hearing. Indeed, the lack of precedent is understandable. Given its potential procedural consequences, a probable cause hearing in a juvenile waiver proceeding is a more critical step in the process than a typical probable cause proceeding available to an adult offender.

■ We now turn to the second reason for requiring a new waiver hearing. When the Legislature amended the Code in 2000, it required the Attorney General to develop guidelines to be disseminated to county prosecutors to ensure uniform application of the waiver provision. *See N.J.S.A.* 2A:4A–26f. Consistent with that mandate, the Attorney General issued guidelines "that identify factors a prosecutor must consider in determining whether to file a motion for waiver to adult court." *R.C., supra,* 351 *N.J.Super.* at 250, 798 *A.*2d 111. In accordance with these guidelines, a prosecutor must prepare a statement of reasons for a waiver application "to assure statewide uniformity in the exercise of prosecutorial discretion." *Id.* at 257, 798 *A.*2d 111. The statement of reasons must accompany the motion for waiver, to allow the court to assure compliance. *Ibid.*

Here, the record does not reflect that the statement of reasons either accompanied the State's motion to waive the Family Part's jurisdiction over defendant or was later supplied to either defense counsel or the court. Thus, the court did not have the opportunity to review the statement of reasons to determine if the prosecutor had properly complied with the guidelines. This failure in itself requires that defendant be afforded another hearing, to provide him with an opportunity to challenge, and allow the court to pass

upon, the State's compliance with the Attorney General's guidelines.

Accordingly, because the court precluded defendant from testifying at the probable cause hearing, and the State failed to submit a statement of reasons for seeking waiver, we vacate the court's order waiving jurisdiction over defendant, vacate his subsequent guilty plea, and remand to the Family Part. On remand, the court shall first determine if the State's failure to attach the statement of reasons to the waiver motion was fatally defective, or whether it may be procedurally cured by permitting a late submission. *See N.J.S.A.* 2A:4A-26d (prosecutor has thirty days to file a motion for waiver to adult court). Should the court decide that an extension of time to perfect the State's waiver motion is warranted, the court shall then conduct a new waiver hearing. At the hearing, the judge must determine whether the prosecutor's statement of reasons for the waiver satisfied the Attorney General's guidelines. If it does, and the hearing goes forward, defendant shall be permitted to testify on the issue of probable cause. Should the judge find no probable cause for a Chart 1 offense, defendant shall then be provided with the opportunity to present evidence on the issue of his rehabilitation.

Reversed and remanded.